NATIONAL WATER CO. v. O'CONNELL et al.

(Circuit Court, E. D. Pennsylvania. January 15, 1908.)

No. 38.

TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION—IMITATION OF LA-
BELS.

Complainant, as proprietor of a spring from which it and its predeces-
sors in business had for many years sold water throughout the United
States and foreign countries under the name of "White Rock Lithia
Water" in bottles having distinctive body and neck labels, *held* entitled
to an injunction to restrain defendants from putting up and selling city
water in competition under the name of "High Rock Lithia Water" in
bottles similar to those of complainant, having body and neck labels of
the same coloring and style of lettering, and so nearly resembling com-
plainant's in general appearance as to be likely to deceive purchasers
using ordinary care, and as to indicate beyond reasonable doubt to a
person comparing them that the simulation was intentional.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and
Trade-Names, § 81.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165;
Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. On final hearing.

C. B. Fraley and Philipp, Sawyer, Rice & Kennedy, for complainant.

F. Carroll Fow and John H. Fow, for defendants.

J. B. McPHERSON, District Judge. This is a bill to restrain un-
fair competition in the sale of drinking water. The complainant is
now the owner of the White Rock spring near Waukesha in the state
of Wisconsin, having acquired a title in June, 1906, that goes back for
25 years. At the same time it acquired also the business and good will
of preparing the water of the spring for consumption, and selling it in
bottles and other receptacles; and the trade-names, trade-marks, and
labels used by its predecessors in title in connection with the business.
Among other trade-marks and trade-names thus acquired were the
name "White Rock" and two distinctive labels, one for the body of a
bottle, and the other for its neck. These labels have been continuously
used since 1893. Specimens are herewith presented, the first being the
neck label, and the second being the body label.

The bill avers, in the tenth paragraph—and there is no dispute con-
cerning the truth of these averments:

"10. That great care, skill, and judgment were at all times exercised by
your orator's predecessor, as your orator is informed and believes and there-
fore alleges, and have been exercised by your orator since it succeeded to the
business as aforesaid, in the protection of the spring aforesaid and the waters
thereof from contamination, in the preparation of the water therefrom for
consumption, and in the bottling or other packaging of the water, with the
end in view that the water should reach the consumer in the best possible
condition, and in bottles and other receptacles free from dirt and other ob-
jectionable matter; that large sums of money and a great amount of time
and labor were expended by your orator's predecessor, as your orator is in-
formed and believes and therefore alleges, and have been expended by your
orator, in carrying on the business of marketing and selling such water un-

der the said trade-mark 'White Rock,' the 'body' label and 'neck' label referred to in paragraphs numbered 7 and 8, and in the distinctive package referred to in paragraph numbered 8 of this bill of complaint, throughout the United States and in foreign countries, and in advertising the same under said trade-mark and 'body' label throughout the United States and in foreign countries; and that by reason of the excellent quality of said water marketed and sold by your orator's predecessor and your orator, the care, skill, and judgment exercised by them as aforesaid, and the expenditure by them of the time, labor, and money as aforesaid, in carrying on said business and in advertising said water throughout the United States and in foreign countries, a high reputation was established many years ago by your orator's predecessors for said water, which has since been maintained by your orator, and said water is now and has been for many years past widely and favorably known to, and very popular with, the public generally throughout the United States and in foreign countries, who are and have been familiar with the trade-mark and 'body' label under which, and the distinctive package in which, said water has been marketed and sold; and that the high reputation established by your orator's predecessors aforesaid, and since maintained by your orator, for such water and the favorable acquaintance therewith of the public throughout the United States and in foreign countries was a source of great pride, benefit and advantage to your orator's predecessors, and is a source of great pride, benefit and advantage to your orator; that the business in such water carried on by your orator's predecessors was, as your orator is informed and believes and therefore alleges, a large and continuously growing one, and that since your orator succeeded to the said business as aforesaid the growth of the same has continued."

In violation of the complainant's rights, the defendants, who are bottlers of drinking water in Philadelphia, are charged with selling, and with threatening to continue to sell, drinking water put up in "labeled bottles simulating and counterfeiting in general appearance and dress your orator's distinctive package referred to in paragraph 8 of this bill of complaint, and bearing 'body' and 'neck' labels which, in size, color and style of type and ornamental matter are imitations and counterfeits of your orator's 'body' and 'neck' labels referred to in paragraphs numbered 7 and 8 of this bill of complaint, said defendants' 'body' and 'neck' labels being as follows": [See opposite page.]

The gravamen of the charge against the defendants is contained in the thirteenth paragraph, which is as follows:

"13. That, as your orator is informed and believes and therefore alleges, said defendants (who, as your orator is informed and believes, sell only to retail dealers, cafés, drinking places, and restaurants, and not to consumers direct) well knew of the trade and business of your orator and its predecessors in the marketing and sale of water under the trade-mark 'White Rock,' and the 'body' and 'neck' labels referred to in paragraphs numbered 7 and 8 of this bill of complaint, and in the peculiar and distinctive package referred to in paragraph numbered 8 of this bill of complaint, and of the acquiescence of the public in the rights of your orator and its predecessors as aforesaid, and that your orator and its predecessors had built up a large and growing business in the marketing and sale of such water in the city of Philadelphia, and other parts of the state of Pennsylvania, as well as throughout the United States generally and foreign countries, and that the sole object of the defendants in adopting for the water sold by them, as aforesaid, the labeled bottle referred to in paragraph numbered 12 of this bill of complaint, and bearing the 'body' and 'neck' labels referred to in said paragraph, was and is to take advantage of this established trade of your orator and to deceive the public and consumers of 'White Rock' water into the belief that they are purchasing the said 'White Rock' water of your orator when they are purchasing 'High Rock' water of the defendants, which, your orator is informed

THIS BOTTLE SHOULD BE LAID ON ITS SIDE

AND KEPT IN A COOL PLACE

and believes and therefore alleges, is inferior to said 'White Rock' water, and is in fact taken by the defendants from the city water supply of the city of Philadelphia; and that, in view of the similarity between the labeled bottles or packages, 'body' labels and 'neck' labels of your orator and the defendants, it is an easy matter for avaricious, unscrupulous and unprincipled dealers and keepers of cafés, drinking places and restaurants to palm or pass off on their customers in single drinks and in bottles the 'High Rock' water of the defendants as and for the 'White Rock' water of your orator, and that dealers and keepers of such cafés, drinking places, and restaurants have, with the knowledge and at the suggestion of the defendants, passed or palmed off on said customers such 'High Rock' water of the defendants as and for the aforesaid 'White Rock' water of your orator; and that customers of such dealers and keepers have been deceived into taking, and have taken, said 'High Rock' water of the defendants as and for the 'White Rock' water of your orator."

An answer having been filed and testimony having been taken on behalf of the complainant—no evidence was offered by the respondents—the case came on for final hearing, and the facts charged in the bill were satisfactorily shown to be true. The defendants do not dispute the complainant's title, or the validity and value of its trade-marks, but content themselves with a denial of infringement; declaring the important question to be—as the brief of their counsel states it—"whether such trade-mark has been unlawfully used or appropriated, making it possible to deceive a person using ordinary care and judgment and intelligence."

It is no doubt true, that the complainant does not have, and I do not understand it to claim, an exclusive right to the following elements in its package, taken singly, namely, the dark color or the shape of its bottle, or the shape of its labels, or the colors used in the words, letters, and figures thereon; but, while it may not be able to claim successfully a property in any one of these elements to the exclusion of all other persons, it has established, in my opinion, an exclusive right to the general effect produced by all of them, taken together, and especially to the general effect of the two labels in their proper place upon the complainant's bottle. Upon the labels alone, thus placed, I rest the decision of the court; and I venture to affirm that, with few exceptions, the observer of ordinary care and intelligence would readily mistake one for the other; and that, if his attention should be called upon closer inspection to the differences between the two sets of labels, he would be satisfied beyond reasonable doubt, that the defendants' set was deliberately devised, and was well calculated, to deceive purchasers and users into the belief that they were receiving the White Rock water of the complainant, instead of the High Rock water of the defendants. No doubt, some differences exist. Few imitations are so stupidly designed as to be free from differences, but the resemblances are so many and so pronounced as to leave no doubt in my mind that the defendants intended to profit by the reputation of the water sold by the complainant, and to insinuate their own product where it might not be able to make its unaided way. To sell plain Schuylkill water—not even filtered, so far as appears—as "lithia water," adding the other statements and suggestions concerning its virtues that appear on the defendants' labels, goes, I think, somewhat beyond the latitude allowed to a merchant who is commending his wares, and sensibly approaches the province over which the district attorney of the county presides. One

who is willing to commit himself to these statements is not likely to be very scrupulous concerning the degree of resemblance between the labels upon his product and the labels upon the product of a more successful competitor, and, as I have already said, I have no doubt that the defendants went deliberately as far in this direction as they thought it prudent to go. How far they were willing to go, may be seen from an examination of the labels themselves, and from the following accurate description of the two packages, which I quote from the brief of complainant's counsel:

"Complainant's Package.

"An amber colored bottle bearing (1) a large four-lobed label on its body portion; and (2) a small label on its neck just above the body of the bottle.

"The body label and neck label have bright yellow grounds—both of the same shade.

"On the body label, between the lower and upper lobes thereof, is pictured, in black, a pool of water. Above the latter and in the upper lobe appears, in white, a woman kneeling on a rock and looking into the pool, with other rocks in black as a background, the general effect of this part of the label being that of black and white in strong contrast.

"Across that part of the label where the pool appears are printed, in large red letters, with black and white shading, the words 'WHITE ROCK,' and below them, in large black letters, with white shading, the word 'WATER,' preceded by the word 'Lithia' in small black letters.

"The body label also bears the words, in red letters, 'PURE, SPARKLING, HEATHFUL,' in the lower part of the label, and in the lower part it also bears the words 'White Rock Mineral Spring Co., Waukesha, Wis., U. S. A.,' in black letters.

"All the type, pictorial and ornamental matter on the body label is inclosed by a yellow border, separated from the body of the label by a black line following the outline or shape of the label.

"The neck label bears, in large red letters, with black shading and extending the length of the label. the words 'WHITE ROCK.'"

"Defendants' Package.

"An amber colored bottle bearing (1) a large four-lobed label on its body portion; and (2) a small label on its neck just above the body of the bottle.

"The body label and neck label have bright yellow grounds—both of the same shade.

"On the body label, between the lower and upper lobes thereof, is pictured, in black, a pool of water. Above the latter and in the upper lobe appears, in white, a waterfall passing over rocks and emptying into the pool, with other rocks in black as a background, the general effect of this part of the label being that of black and white in strong contrast.

"Across that part of the label where the pool appears are printed in large red letters, with black and white shading, the words 'HIGH ROCK,' and below them, in large black letters, with white shading, the word 'WATER,' preceded by the word 'LITHIA' in large black letters.

"The body label also bears the words, in red letters, 'PURE, SPARKLING & HEALTHFUL,' in the upper part of the label, and in the lower part it also bears the words 'Louis O'Connell & Co.,' in black letters and 'Philadelphia, Pa.,' in red letters.

"All the type, pictorial and ornamental matter on the body label is inclosed by a yellow border, separated from the body of the label by a black line following the outline or shape of the label.

"The neck label bears in large red letters, with black shading and extending the length of the label, the words 'HIGH ROCK.'"

It is scarcely necessary, I think, to cite and discuss other decisions. If an inspection of the two sets of labels in question does not satisfy the ordinary observer that confusion and mistakes are certain to occur

frequently if the continued use of both sets in the market is permitted, a comparison with other cases will hardly be convincing.

Something appears in the defendants' brief concerning the alleged laches of the complainant, based upon a delay of several months in bringing the present suit. I do not understand the position to be seriously urged, but if it is relied upon as one of the defenses, I am obliged to overrule it. As it seems to me, reasonable diligence has been shown by the complainant in the effort to vindicate its rights.

A decree, with costs to the complainant, may be drawn in accordance with this opinion.