## FARRELL *v.* PORT OF COLUMBIA.

91 Pac. 546, 93 Pac. 254.

STATUTES—CONSTITUTIONAL LIMITATION ON POWER OF LEGISLATURE TO CREATE MUNICIPAL CORPORATIONS.

1. The Constitution of Oregon, Art. XI, § 2, as amended in 1906, providing that corporations may be formed under general laws, and that the legislature shall not enact or repeal any charter or act incorporating any municipality, city or town, now prohibits the legislature from creating any corporation of any kind by a special act.

STATUTES—PORT OF COLUMBIA A SPECIAL PUBLIC ACT.

2. The act incorporating the Port of Columbia (Laws 1907, pp. 182, 190), is a special public act creating a corporation, and is in direct violation of Const. Or. Art. XI, § 2, as amended in 1906: *Dunn* v. *State University*, 9 Or. 357, and *Liggett* v. *Ladd*, 23 Or. 26, distinguished.

CONSTITUTIONAL LAW — AMENDMENT OF STATE CONSTITUTION — SUBMISSION TO POPULAR VOTE.

3. Const. Or. Art. IV, Section 1, as amended in 1902, reserves to the people the power to propose amendments to the Constitution and to enact or reject them at the polls, independent of the legislative assembly, and provides that, on petition filed with the Secretary of State, the amendment shall be submitted to the people, and, if approved by a majority, shall become operative. Article XVII, Section 1, provides that an amendment to the Constitution may be proposed in the legislative assembly, and if agreed to by a majority shall be referred to the legislative assembly next to be chosen, and that if the amendment shall be agreed to by a majority of that legislative assembly the amendment shall be submitted to the voters, and if a majority of them shall ratify the same such amendment shall become a part of the Constitution. *Held*, that Article XI, Section 2, as amended in June, 1906, prohibiting the legislature from creating corporations by special laws, was legally adopted, though not twice submitted to and approved by the people; Article XVII, Section 1, having no reference to an amendment made under Article IV, Section 1.

From Multnomah: JOHN B. CLELAND, Judge.

Suit by Sylvester Farrell against the Port of Columbia and its commissioners to restrain said commissioners from proceed-

ing under the act creating said corporation. A demurrer to
the complaint was sustained and plaintiff appeals.

REVERSED.

For appellant there was a brief over the name of *Dolph, Mal-
lory, Simon & Gearin,* with an oral argument by *Mr. John M.
Gearin.*

For Clatsop County, by permission of the court, there was
a brief supporting appellant over the names of *Frank J. Taylor,
J. F. Hamilton* and *George Clyde Fulton,* with oral arguments
by *Mr. Taylor* and *Mr. Fulton.*

For respondents there was a brief over the names of *Warren
Ellsworth Thomas, T. G. Hailey* and *Williams, Wood & Lin-
thicum,* with oral arguments by *Mr. Thomas* and *Mr. Stewart
Brian Linthicum.*

Opinion by MR. CHIEF JUSTICE BEAN.

This suit involves the constitutionality of an act of the leg-
islative assembly of 1907 to establish and incorporate the Port
of Columbia: Laws 1907, p. 182. By this act the counties of
Multnomah, Clatsop and Columbia are created a separate dis-
trict, and the inhabitants thereof are constituted and declared
to be a corporation by the name and style of the "Port of
Columbia," and as such to have perpetual succession; to hold,
receive and dispose of real and personal property; to sue and
be sued, plead and be impleaded in all suits or proceedings
brought by or against it. The declared object of the corpora-
tion so formed is to promote the maritime shipping and com-
mercial interest of the Port of Columbia. For that purpose, it
is given power and made its duty to own, operate and maintain
a towage service from the open sea, at the entrance of the
Columbia River, to all points upon the river extending as far
inland as Tongue Point, near Astoria; to purchase, own, lease,
control and operate tugs and pilot boats; to appoint and license
pilots; to fix and collect charge for pilotage; to acquire, own
and dispose of real and personal property; to make any con-
tracts the making of which is not in this act expressly prohib-

ited; and to do all other acts and things which may be requisite, necessary or convenient in carrying out the powers conferred. For the purpose of acquiring tug and pilot boats, and providing the same with necessary appliances, the corporation is given power to issue, sell and dispose of bonds not exceeding the aggregate sum of $400,000, and power and authority to assess, levy and collect each year a tax upon all property, real or personal, within its boundaries, which is by law taxable for state and county purposes, not to exceed a rate therein specified, to retire such bonds at maturity and the payment of interest thereon. The power and authority given to the corporation is to be exercised by a board of commissioners, and their successors in office to be appointed as in this act provided.

1. This law was evidently modeled after that creating the Port of Portland (Laws 1891, p. 791), and, if the constitution had not been amended since the enactment of the latter statute, it could possibly be sustained, if otherwise valid, on the ground that it is a corporation created for municipal purposes. At the time of the passage of the Port of Portland act, the Constitution of Oregon (Article XI, § 2), provided that corporations might be formed under general laws, but should not be created by special laws, except for municipal purposes, and it was held that the Port of Portland was a corporation formed for municipal purposes within the meaning of this provision: *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263: 13 L. R. A. 533). In June, 1906, the section referred to was amended to read:

"Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon."

By this amendment the power to create corporations for municipal purposes by special act was not only eliminated, but the creation of a corporation by such an act is expressly prohibited, and it is no longer in the power of the legislative

authority to create a corporation public or private by a special law. It would seem, therefore, that the act incorporating the Port of Columbia is in violation of this section, as amended. and void.

2. But counsel argue that it is a general and not a special law, and therefore not prohibited by the constitution. It is not easy to define the distinction between a general law and one that is special, and, to use the language of the Court of Appeals of New York: "It has been found expedient to leave the matter, to a considerable extent, open, to be determined upon the special circumstances of each case": *Ferguson* v. *Ross,* 126 N. Y. 459 (27 N. E. 954). Statutes are often classified as public or general and private or special, a public statute being one of which the courts will take judicial notice, while a private statute must be pleaded: 1 Kent, *460; 1 Blackstone, *85. That this is a public law must be conceded, not only because it is one of which the courts will take judicial notice, but because the constitution provides that every statute shall be a public law unless otherwise declared by the statute itself: Article IV, § 27. It does not follow, however, that because it is a public law it is a general one. "Public" and "general" as applied to statutes are sometimes synonymous, depending upon the context, but they are not so in all cases. Every general law is necessarily a public one, but every public law is not a general one. Thus, an act incorporating a city is a public law, but it is not a general one, because it is applicable to a particular locality. Also, an act authorizing a certain school district to issue bonds for the purpose of erecting a schoolhouse, and purchasing a site therefor, is a special law, and in violation of a constitutional provision that "the legislature shall pass no special act conferring corporate power": *Clegg* v. *School District,* 8 Neb. 179; *School District* v. *Insurance Co.* 103 U. S. 707 (26 L. Ed. 601). And, again, laws amending a city charter in respect to making local improvements, or extending the limits of a particular city, are special acts, and held unconstitutional under a provision that "the legislature shall pass no

special act conferring corporate power": *Atchison* v. *Bartholow,* 4 Kan. 124; *City of Wyandotte* v. *Wood,* 5 Kan. 603; *State ex rel.* v. *City of Cincinnati,* 20 Ohio St. 18. When used as opposite to "private," and having reference to the subject-matter of a statute, the term "general" is equivalent to "public."

When, however, it is used in reference to the territory embraced within a law, and in opposition to "local," it means operating over the whole jurisdiction of the lawmaking power, instead of a particular locality. And, when it is used in contradistinction to "special," it signifies relating to the whole community or all of a class instead of to a particular locality or a part of a class. In this latter sense a law is general when it operates equally and uniformly upon all persons, places or things brought within the relation and circumstances for which it provided. But when it is applicable only to a particular branch or designated portion of such persons, places or things, or is limited in the object to which it applies, it is special: *Lippman* v. *People,* 175 Ill. 101 (51 N. E. 872); *Wheeler* v. *Pennsylvania,* 77 Pa. 338; 26 Am. & Eng. Enc. Law (2 ed.), 532; 1 Lewis, Sutherland, Stat. Const. § 195. It is in this sense that the terms "general" and "special" are used in the provision of the constitution now under consideration. The object of the amendment was to deprive the lawmaking power of the right to create particular corporations, either public or private, and to require that all corporations be formed under a law the provisions of which shall be applicable alike to all. A general law, within this section of the constitution, is one by which all persons or localities complying with its provisions may be entitled to exercise the powers and enjoy the rights and privileges conferred. A special law, on the other hand, is one conferring upon certain individuals or citizens of a certain locality rights and powers or liabilities not granted to, or imposed upon, others similarly situated. The act creating the Port of Portland is clearly a special law as so defined, and cannot be upheld without doing violence to the expressed and plain language of the constitution. The provision of Article

IV, § 23, prohibiting the passage of special and local laws on enumerated subjects, was under discussion in *Allen* v. *Hirsch*, 8 Or. 412, and *Maxwell* v. *Tillamook County*, 20 Or. 495 (26 Pac. 803). What is there said in reference to the distinction between general and special laws must be understood as applying to the construction of that provision of the constitution and has only a general bearing upon the present case.

The cases of *Dunn* v. *State University*, 9 Or. 357, and *Liggett* v. *Ladd*, 23 Or. 26-45 (31 Pac. 81), are cited as authorities supporting defendants' position. It is argued that the regents of the University and of the Agricultural College are not corporations for municipal purposes, and, since at the time of the passage of the laws providing for their appointment and defining their duties the legislature was inhibited from creating corporations by special law, except for such purposes, the court necessarily must have concluded in ruling that they are incorporations and that the act providing for their appointment was a general one. *Dunn* v. *University* (which was cited in *Liggett* v. *Ladd*, as authority for holding that the regents of the Agricultural College are a body capable of taking and holding title to real property) was a suit to avoid a deed made to the regents. The defense was that they were agents of and held the property in trust for the State, and therefore could not be sued. The court considered this position unsound. The effect which the provision of the constitution inhibiting the creation of corporations by special act had on the question for decision is not referred to or mentioned by the court. It is said in the opinion, however, that the University itself is not a corporation, but that the regents are an incorporated body, although not made so by the legislature. But, after discussing this question, it is finally concluded that, whether an incorporation or not, they were agents of the State, holding the legal title to the property then in controversy, and for that reason possessed no immunity from being sued, and that was the only point in the case. Its determination in favor of the plaintiff was sufficient for the purpose of the decision, and what is said about the

regents being an incorporation may, with propriety, be deemed dicta. But, however that may be, the decision is not an authority supporting the act now under consideration. The regents of the University, if an incorporation, in the sense that they may take and hold title to property, and sue and be sued, are not a corporation in the ordinary meaning of that term. They are merely administrative agents of the State, charged with the control and supervision of one of its educational institutions, with no power to levy or collect taxes, or impose burdens upon the people of the State or any particular locality thereof.

Having reached the conclusion that the act under consideration is unconstitutional and void, because it is an attempt to create a corporation by a special law, it is unnecessary to consider the question as to whether a corporation of the kind sought to be created is a municipality, within the meaning of that portion of Article XI, § 2, as amended, which prohibits the legislature from enacting, amending or repealing the charter or the act of incorporation of a municipality, city or town. The decree of the court below will be reversed and one entered here in favor of plaintiff.                          REVERSED.

MR. JUSTICE MOORE did not sit in this case.

Decided 8 January, 1908.

ON MOTION FOR REHEARING.

93 Pac. 254.

PER CURIAM: A petition for rehearing was filed in this case in September last. Its consideration was deferred at the request of counsel for defendants, that they might submit an additional argument in its support, and they have just advised that no such argument will be filed. Except on one point the petition is a reargument of the cause, and, notwithstanding the able presentation of counsel, we are constrained to adhere to the former opinion.

3. It is insisted, however, for the first time, that the amendment of Section 2, Article XI, of the Constitution, adopted in

June, 1906, prohibiting the legislature from creating corporations by special laws, was not legally adopted, because it was not twice submitted to and approved by the people. By Section 1, Article IV, as amended in 1902, the people reserve to themselves the power to propose amendments to the Constitution and enact or reject them at the polls, independent of the legislative assembly. This section provides that upon a petition of not more than 8 per cent of the legal voters of the State, proposing any measure, being filed with the Secretary of State not less than four months before the election at which such measure is to be voted upon, the same shall be submitted to the people, and if approved by the majority of the votes cast thereon shall become operative. There is no requirement that an amendment proposed under this section shall be submitted to and approved by the people more than once, and Section 1, Article XVII, can have no reference to such an amendment, since the power reserved to the people is "independent of the legislative assembly."

Petition for rehearing denied.

REVERSED:   REHEARING DENIED..