Argued October 21, decided November 24, 1908.

## FARRELL v. PORT OF PORTLAND.

[98 Pac. 145.]

MUNICIPAL CORPORATIONS — CONSTRUCTION OF CONSTITUTION — INITIATIVE AND REFERENDUM.

1. Constitution of Oregon, Article IV, Section 1, as amended in 1902, creates and defines the initiative and referendum powers and makes them applicable to general legislation. Section 1a enlarges and extends the powers to the voters of every municipality and district as to all local, special and municipal legislation, and requires the manner of exercising the powers to be prescribed by general laws, except that cities and towns may provide for the manner of exercising the powers as to their municipal legislation, the proportion of voters in any city or town required to exercise the powers being limited to a certain percentage. Article XI, Section 2, as amended in 1906, prohibits the legislature from enacting or amending any municipal charter then in existence. *Held*, that in view of the facts that the legislature is prohibited from amending municipal charters and that unless the power to amend acts incorporating municipalities, other than cities and towns, is vested in the people, they cannot be changed without a constitutional amendment, the manifest purpose of the amendments was to vest in the people of all municipalities, including cities, towns, and others, the power to amend their charters, and hence to vest the power in the Port of Portland.

MUNICIPAL CORPORATIONS—CHARTERS—AMENDMENT—"GENERAL LAW."

2. Laws 1907, p. 398, c. 226, which declares its purpose to be to carry into effect the initiative and referendum powers reserved to the people in Constitution, Article IV, Sections 1, 1a, as to general, local, and special legislation, and to regulate elections thereunder and to carry into effect the amend-

ment of Article XI, Section 2, granting cities and towns the right to amend
their charters, and which provides (Section 2) a form of initiative petition
applicable to "any law," and provides that the circuit court of the county in
which the municipality concerned is situated shall have jurisdiction over
controversies arising under the act, is a general law within Constitution,
Article IV, Section 1a, requiring the manner of exercising the initiative and
referendum to be prescribed by general laws, except in cases of cities and
towns, and is broad enough to include proceedings by initiative to amend the
charter of the Port of Portland, a municipality not a city or town, but
incorporated under a State law.

MUNICIPAL CORPORATIONS—INCORPORATION—SPECIAL ACT—AMENDMENT.
   3. The original act of incorporation of the Port of Portland declares the
object of the incorporation to be "to promote the maritime, shipping and
commercial interests of the Port of Portland in all manners as in this act set
out and contained or as it may hereafter be thereto specially authorized and
empowered," and authorizes the incorporation to do all acts necessary or
convenient in carrying out the powers granted. A law adopted by the voters
of the corporation purported on its face to be an amendment of the original
act, by which the powers were extended to embrace authority to maintain a
towage and pilotage service, and to purchase, lease, and operate steam tug-
boats and pilot boats and to issue bonds therefor. *Held,* that the additional
powers were germane to the original purpose of the creation of the Port, and
the adopted law was a valid amendment of the original act, and not new
legislation.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

This is a suit by Sylvester Farrell against the Port
of Portland, to enjoin the carrying into effect of the
provisions of an amendment to the act incorporating
the Port of Portland. From a decree in favor of defend-
ants, plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of
*Messrs. Dolph, Mallory, Simon & Gearin,* with oral argu-
ments by *Mr. John M. Gearin* and *Mr. Elmer E. Coovert.*

For respondents there was a brief over the names of
*Messrs. Williams, Wood & Linthicum,* and *Mr. John C.
Flanders,* with oral arguments by *Mr. George H. Wil-
liams* and *Mr. Flanders.*

Opinion by MR. CHIEF JUSTICE BEAN.

This suit is brought by a citizen and taxpayer of the
Port of Portland, to enjoin and restrain its board of
commissioners from carrying into effect the provisions
of an amendment to the act incorporating the port, pro-
posed by the initiative and adopted by the voters, on

the ground that such law is void. No question is made as to the regularity of the proceeding under which the law was proposed and adopted, but the position of plaintiff is that (1) the people of the Port of Portland have no power under the constitution to propose and adopt at the polls amendments to the act incorporating the port; (2) that if they have such power it cannot be exercised except in pursuance of some general law providing the manner and method of such exercise, and such law has not been enacted; and (3) that the law as adopted and now in question is not in fact an amendment to the act incorporating the Port of Portland, but is an attempt to confer powers not germane to or connected with the original purposes of its incorporation.

The Port of Portland is a municipal incorporation organized in pursuance of an act of the legislature passed in 1901, the constitutionality of which was upheld in *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263: 13 L. R. A. 533). It is, however, neither a city nor a town in the strict, technical sense, and, therefore, it is contended that it does not come within the several provisions of the constitution reserving to the people local, self-government.

1. To understand the question thus presented, it is deemed best to set out in full the several constitutional amendments in any way applicable thereto. In June, 1902, Section I, Article IV, of the Constitution of Oregon was amended to read as follows:

"Section 1. The legislative authority of the State shall be vested in a legislative assembly, consisting of a Senate and House of Representatives, but the people reserve to themselves power to propose laws and amendments to the constitution and to enact or reject the same at the polls, independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the initiative, and not more than eight per cent of the legal voters shall be required to propose any measure by such petition,

and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by the petition signed by five per cent of the legal voters, or by the legislative assembly, as other bills are enacted. Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures referred to the people. All elections on measures referred to the people of the State shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise. The style of all bills shall be: 'Be it enacted by the people of the State of Oregon.' This section shall not be construed to deprive any member of the legislative assembly of the right to introduce any measure. The whole number of votes cast for Justice of the Supreme Court at the regular election last preceding the filing of any petition for the initiative or for the referendum shall be the basis on which the number of legal voters necessary to sign such petition shall be counted. Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State, and in submitting the same to the people, he, and all other officers, shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor."

As this amendment did not extend the referendum powers therein provided to parts less than the whole of a legislative act, and as there was some doubt as to whether it applied to municipal legislation, an additional amendment to Article IV was adopted in June, 1906, by inserting after Section 1 and before Section 2 the following:

"Section 1a. The referendum may be demanded by the people against one or more items, sections, or parts of any act of the legislative assembly in the same manner in which such power may be exercised against a complete act. The filing of a referendum petition against one or more items, sections, or parts of an act shall not delay the remainder of that act from becoming operative. The initiative and referendum powers reserved to the people by this Constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. Not more than ten per cent of the legal voters may be required to order the referendum nor more than fifteen per cent to propose any measure, by the initiative, in any city or town."

At the same election an amendment to Section 2 of Article XI was also adopted prohibiting the creation by the legislative assembly of municipal corporations by special laws, which reads as follows:

"Sec. 2. Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the State of Oregon."

The contention of plaintiff is that the power of the people of a municipality to amend its charter or act of incorporation is to be found alone in Section 2, Article XI, and since the last clause of that section grants such power to cities and towns only, it—by implication—excludes municipalities like the Port of Portland. But this section and the language used in it should not be construed alone. It is a part of the general initiative and referendum scheme first inaugurated by the amend-

ment of 1902, and subsequently enlarged and extended by the amendments of 1906. All these amendments, so far as they refer to the same subject-matter, should be read together, and be so interpreted as to carry out the purpose of the people in adopting them, regardless of the technical construction of some of the language used. By the amendment of 1902 the initiative and referendum powers were created and defined, and made applicable to general legislation. By the amendment known as Section 1a, these powers were further enlarged and extended to the legal voters of every municipality and district as to all local, special, and municipal legislation, and by the amendment of Section 2, Article XI, the legislature was prohibited from creating corporations by special law, and from enacting, amending, or repealing any charter or act of incorporation then in existence. The power, therefore, to enact or amend municipal charters no longer resides in the legislature, but is to be exercised only by the people. And unless the power to amend acts incorporating municipalities, other than cities and towns, is thus reserved to or vested in the people, they cannot be changed, amended, or modified until the adoption of some constitutional amendment covering the subject. The court should not reach such a conclusion unless it is compelled to do so by the language of the several amendments, and we cannot bring ourselves to believe that such was the intention of the people in adopting these amendments, although a strict construction of the language used in one or more of them might lead to that result. The manifest purpose, so far as it concerns the question now under consideration, was to take from the legislature and vest in the people the power to amend municipal charters and acts governing and defining the powers and duties of all municipal corporations. This is evident from the provisions of Section 1a, reserving this power to legal voters of every municipality and district, as to all local legislation, which

provision is applicable to amendments to municipal charters (*Acme Dairy Co.* v. *Astoria,* 49 Or. 520: 90 Pac. 153) ; and we think this language must be read in connection with Section 2 of Article XI, and when so interpreted the power sought to be exercised in this case is conferred.

2. But it is said that if the power is reserved to the people of the Port of Portland to amend its charter or act of incorporation, such power can be exercised only in the manner provided in some general law, and such law has not been enacted. The legislature of 1907, (Laws 1907, p. 398, c. 226), evidently intended to make such provision. The law is, in many respects, indefinite and uncertain, due, no doubt, to the fact that it is the first of its kind to be found in the statute books of this country, and its framers were unable to anticipate all possible conditions which might arise. But, taken as a whole, its purpose is manifest. The obvious intention of the legislature was to provide for the initiative and referendum in all cases authorized by the constitution. This seems clear from the title of the act, which declares its purpose to be to carry into effect the initiative and referendum powers reserved to the people in Sections 1 and 1a, Article IV, of the Constitution, as to general, local, and special legislation, and to regulate elections thereunder; and for carrying into effect the amendment of Section 2, Article XI, granting to cities and towns the right to enact and amend their charter. The form of the initiative petition provided for in Section 2 is made applicable to any law. The act incorporating the Port of Portland is a law, and therefore within the term of this act. It also appears from the form provided that it is intended for use by the voters of the State at large, or of any district or city therein. And, again, in providing the courts which shall have jurisdiction over controversies concerning the form of petitions and other matters arising under the provisions of the act,

it is declared that in cases of measures to be submitted to the electors at large, the Circuit Court of Marion County shall have jurisdiction, but in cases of municipal legislation the Circuit Court of the county in which the municipality concerned is situated shall have jurisdiction, thus showing that the legislature had in mind measures that might be submitted to the electors at large or to the voters of a local subdivision, and was intending to make provision for all cases authorized by the several constitutional amendments. And, however loose or imperfect the language used may be, the intention of the legislature should be given effect if it can be done without doing violence to the language. We think, therefore, the act of 1907 is broad enough to include proceedings for the amending of a charter of a municipality other than cities and towns.

3. It is also claimed that the law adopted by the voters of the Port of Portland, in June, 1908, was new legislation, and not in fact an amendment to the original act incorporating the port. It purports on its face to be an amendment by which the powers of the Port of Portland are "enlarged and extended" so that, in addition to the powers specifically granted, it is granted authority to establish and maintain an efficient towage and pilot service between the corporate limits of the port and the open sea. In the original act of incorporation it is declared that the object, purpose, and occupation of the corporation shall be "to promote the maritime, shipping and commercial interests of the Port of Portland in all manner as in this act set out and contained, or as it may hereafter be thereto specially authorized and empowered." To that end it is authorized to do any and all acts and things which may be requisite, necessary, or convenient in carrying out the powers granted. By the amendment the municipality is further authorized and empowered to establish and maintain a towage and pilotage service, and to that end to purchase, lease, control, and operate steam tugboats and steam and sail

pilot boats, and for the purpose of acquiring these boats to issue and dispose of bonds of the municipality not exceeding in amount $500,000. This we think is germane to the original purpose for its creation. As said by Mr. Justice WOLVERTON in a similar case: "The central idea attending the entire act, with all of its amendments, is to establish and incorporate a port under the designation of the 'Port of Portland.' This is the real and paramount subject for legislation. The improvement of the channel of the two rivers and the promotion of maritime, shipping, and commercial interests of the port are incidental. * * It is a most natural thing for a port organized as such to deepen, if need be, and improve its harbor, to remove obstructions, and deepen the channels entering such harbor, to maintain and operate dredges for the purpose, and promote shipping and all commercial interests connected with the coming and departure of vessels laden with the products and fabrics of the home market and elsewhere. All these things are connected with and manifestly germane to the central subject." And consequently it was held that the port has power and authority to construct and operate a dry dock and charge and receive tolls for the use thereof. The Elder (D. C.) 159 Fed. 1005. Upon the same reasoning we think it can be legally authorized to operate and maintain tug and pilot boats as aids to and for the purpose of promoting the maritime, shipping, and commercial interests of the port. It goes without saying that the establishment and maintenance of an efficient towage and pilotage service between Portland and the sea would promote greatly the shipping and commercial interests. The deepened river which the Port of Portland is authorized to maintain would be of but little value, unless towboats were provided to tow ships between the sea and the port, or unless an efficient pilot service is provided for entering and departing vessels.

It follows that the decree of the court below must be affirmed, and it is so ordered.          AFFIRMED.