Argued August 4, decided August 24, 1909.

## STRAW v. HARRIS.

[103 Pac. 777.]

CONSTITUTIONAL LAW– STATE CONSTITUTIONS—AS LIMITATION OF POWERS.
    1. The legislative department of a state, unlike that department of the national government, may enact any law not expressly or impliedly prohibited by the constitution.

CONSTITUTIONAL LAW—STATUTES—CONSTRUCTION.
    2. All reasonable doubts must be resolved in favor of an act in determining whether it conflicts with the constitution.

STATUTES—SUBJECTS AND TITLES OF ACTS—CONSTITUTIONAL REQUIREMENTS—EXPRESSION IN TITLE OF SUBJECT OF ACT—"PORT."
    3. Act February 12, 1909, is entitled "An act to provide for incorporation under general law of ports in counties bordering on bays or rivers navigable from the sea." Laws 1909, p. 78. Held that, in view of legislation and decisions on the subject, the term "port" has a recognized status, and is used in its larger acceptation as comprising under one name a district of many places classed together for the purpose of revenue; and hence the title of the act is sufficient under Section 20, Article IV, Constitution of Oregon, providing that the subject of every·act shall be expressed in its title.

STATUTES—SPECIAL LAWS—CREATION OF CORPORATIONS—MUNICIPALITIES—"CORPORATION."
    4. Section 2, Article XI, Constitution of Oregon, which, as first adopted, provided that corporations may be formed under general laws, but shall not be created by special laws except for municipal purposes, was amended June

4, 1906, to read: "Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws." *Held,* that such section, viewed in the light of the reference to "other corporations" in Section 9, providing that no county, city, town, or other municipal corporation shall become a stockholder in any corporation, etc., employed the word "corporation" in its broadest sense, including public, municipal, and private corporations; and hence a corporation for municipal purposes may not be created by special laws.

STATUTES—"GENERAL LAW"—"SPECIAL LAW."

5. A "general law" within the meaning of Section 2, Article XI, Constitution of Oregon, as amended June 4, 1906, and providing that corporations may be formed under general laws, but shall not be created by special laws, is one by which all persons or localities complying with its provisions may be entitled to exercise powers, rights, and privileges conferred, while a "special law" is one conferring on certain individuals or citizens of a certain locality rights and powers or liabilities not granted to or imposed on others similarly situated.

STATUTES—GENERAL AND SPECIAL LAWS.

6. Act February 12, 1909 (Laws 1909, p. 78), providing for the incorporation under general law of ports in counties bordering on bays or rivers navigable from the sea, is a general law within the provisions of Section 2, Article XI, Constitution of Oregon, as amended June 4, 1906, providing that corporations may be formed under general laws.

STATUTES— SPECIAL LEGISLATION — CREATION OF CORPORATIONS — CONFERRING POWER ON COURTS.

7. Under Section 2, Article XI, Constitution of Oregon, as amended June 4, 1906, and providing that corporations may be formed under general laws, the legislature had power in passing act February 12, 1909 (Laws 1909, p. 78), providing for the incorporation under general law of ports in counties bordering on bays or rivers navigable from the sea, to delegate to the county court the power to declare the incorporation of a port.

MUNICIPAL CORPORATIONS—INDEBTEDNESS—CONSTITUTIONAL LIMITATIONS—RESTRICTIONS IN INCORPORATION ACTS.

8. Section 5, Article XI, Constitution of Oregon, provides that acts incorporating towns and cities shall restrict their powers of contracting debts. Section 10 provides that no county shall create any debts exceeding the sum of $5,000. *Held,* that neither of said sections is violated by act February 12, 1909 (Laws 1909, p. 78), providing for the incorporation under general law of ports in counties on bays or rivers navigable from the sea, because of no specific limitation of indebtedness being placed on municipalities to be created under it; such municipalities being neither towns or cities or counties.

CONSTITUTIONAL LAW— DISTRIBUTION OF GOVERNMENTAL POWERS— POWER OF COURTS—WISDOM OF LEGISLATION.

9. The courts may not say whether or not legislation is wise, reasonable, unjust, or oppressive; that function being for the legislative department only.

MUNICIPAL CORPORATIONS — INDEBTEDNESS — CONSTITUTIONAL LIMITATIONS.

10. Section 5, Article XI, Constitution of Oregon, provides that acts incorporating towns and cities shall restrict their powers of taxation, contracting debts, etc. Section 10 provides that no county shall create any debts or liabilities exceeding a certain sum. *Held* that, since the right given by the Constitution to form larger municipalities necessarily carries with it power

to include those more limited in territory regardless of the proportionate increase in the indebtedness and taxation to follow that may necessarily accrue to the included towns by reason thereof, the limitation placed on the corporations enumerated applies only to each standing as a separate and distinct political division, and not to a larger municipality of which they may form an integral part; and hence act February 12, 1909 (Laws 1909, p. 78), providing for the incorporation under general laws of ports in counties bordering on bays or rivers navigable from the sea, is not unconstitutional as imposing on incorporated towns within the limits of a port indebtedness and taxes exceeding the limitations prescribed in such sections.

MUNICIPAL CORPORATIONS—AMENDMENT OF CHARTERS.

11. Since act February 12, 1909 (Laws 1909, p. 78), providing for the incorporation under general law of ports in counties bordering on bays or rivers navigable from the sea, does not, by permitting the incorporation of ports, thereby directly attempt to amend the charter of any city or town within the boundaries thereof, but may only affect the charters and ordinances of such cities and towns to the extent that they may conflict with the general object for which the port may be organized, the act does not contravene Section 2, Article XI, Constitution of Oregon, as amended June 4, 1909, providing that the legislative assembly shall not enact, amend, or repeal any charter or act of incorporation of any municipality, city, or town, and giving the legal voters of every city or town power to enact and amend their municipal charter.

CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWERS.

12. The State may not surrender its sovereignty to municipalities to the extent that it must be deemed to have perpetually lost control of them.

MUNICIPAL CORPORATIONS—AMENDMENT OF CHARTERS.

13. Municipalities are but mere departments or agencies of the State, charged with the performance of duties for and on its behalf and subject always to its control, and it may therefore, regardless of any declarations in its constitution to the contrary, at any time revise, amend, or even repeal any of the charters within it, subject to vested rights and limitations otherwise provided by fundamental laws.

From Coos: JOHN S. COKE, Judge.

Statement by MR. JUSTICE KING.

This is a suit by E. E. Straw against W. C. Harris, J. C. Gray, E. Mingus, W. P. Evans and Henry Sengstacken, constituting the Board of Commissioners of the Port of Coos Bay, and involves the constitutionality of the incorporation of the "port of Coos Bay," a municipality organized under an act of the legislative assembly adopted February 12, 1909, entitled an "Act to provide for incorporation under general law of ports in counties bordering upon bays or rivers navigable from the sea, and to provide for the manner of incorporating such ports, and defining the powers of ports so incorporated an declaring an emergency." Laws 1909, p. 78. The

district is bounded on the west by the Pacific Ocean, and is situated in Coos County, embracing only a part thereof. It has for its object and purpose the general improvement, in the interest of navigation, of a number of navigable bays, ports, and inlets from the sea situated therein. There is more than one drainage basin in the district, but the limits of the incorporated territory do not extend beyond the natural watershed of any drainage basin of navigable water. Other facts necessary to an understanding of the legal points involved will appear in the opinion. The complaint fully states the facts, showing all the steps taken in forming the port involved, from which it appears that the organization was perfected in full conformity with the provisions of the general law mentioned, thereby bringing in question the constitutionality of the act. The proceeding seeks to enjoin the board of commissioners from condemning certain lands and from issuing bonds, or otherwise carrying into effect the general purpose for which the port was organized. From an order sustaining a general demurrer to the complaint, and decree thereon, plaintiff presents this appeal.    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Guerry & Hollister*, with an oral argument by *Mr. James H. Guerry*.

For respondents there was a brief and an oral argument by *Mr. Cassius R. Peck*.

MR. JUSTICE KING delivered the opinion of the court.

1. The first point demanding attention questions the sufficiency of the title of the act under which the district was created, with reference to which it is insisted that the title does not conform to the requirements of Section 20, Article IV, Constitution of Oregon, in that it is insufficient in clearly expressing the purpose of the law. In this connection it is contended that there is no such legal term as the word "port," that is has no legal entity,

and that, since a different meaning from that which it has heretofore borne has not been legislatively declared, the subject-matter of the act is not included in the title, and accordingly not germane thereto. In considering this point, and other constitutional questions presented, we must keep in mind that it is a universally accepted rule of construction, that in the enactment of laws, the legislative department of a state, unlike that department of the national government, may enact any law not expressly or impliedly prohibited by the constitution.

2. In determing whether an act is in conflict or inconsistent therewith all reasonable doubts upon the question must be resolved in favor of the law thus assailed. We know of no authorities holding to the contrary, and among the adjudications in this State recognizing and adhering to this rule are: *Cline* v. *Greenwood,* 10 Or. 230; *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263: 13 L. R. A. 533) ; *Umatilla Irrigation Co.,* v. *Barnhart,* 22 Or. 389 (30 Pac. 37) ; *Simon* v. *Northrup,* 27 Or. 487 (40 Pac. 560: 30 L. R. A. 171) ; *Kadderly* v. *Portland,* 44 Or. 118, 143 (74 Pac. 710: 75 Pac. 222) ; *State* v. *Walton,* 53 Or. 557 (99 Pac. 431).

3. Bearing in mind that all uncertainties must be resolved in its favor, is the title of the act adequate? The section under which the title is attacked provides that:

"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be emembraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Section 20, Article IV, Constitution of Oregon.

A "port" in its strict and limited sense is defined in the Americana thus: "An artificial or natural harbor or haven; a sheltered inlet, cove, bay, or recess, into which vessels can enter and in which they can lie in safety from storm." It will be observed, however, that

following the word "ports" the title in part indicates the purpose for which ports under it may be incorporated by limiting them to "counties bordering upon bays or rivers navigable from the sea," and by stating that its purpose is to provide the manner of incorporation thereof, "defining the powers of ports so incorporated," etc. In *Dock Co.* v. *Brown,* (Eng.) 2 Barn. & Adol. 28, a similar question was presented, concerning which Lord Chief Justice TENTERDEN, after noting that "the question is whether the words 'port of Kingston-upon-Hull' are to be understood in the sense of locality, as denoting the particular place so named, or in a more enlarged and extensive sense, as comprising all the places and the whole district that, for some purposes of control, management, or superintendence are within the limits of, and dependent upon or members of, a port whereof Kingston-upon-Hull is the head and chief," holds that the word "port" is used in two senses: (1) Denoting a particular place; and (2) in a larger acceptation as comprising under one name a district of many places classed together for the purpose of revenue. Thus it appears that the word "port" has long been recognized as having a double meaning. The larger acceptation thereof, judging from enactments on the subject, together with adjudications thereon, it would seem is the sense in which it is usually understood in this State when used in legislation of the character under consideration. Laws 1891, p. 791; *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263: 13 L. R. A. 533); *Farrell* v. *Port of Columbia,* 50 Or. 171 (91 Pac. 546: 93 Pac. 254); *Farrell* v. *Port of Portland,* 52 Or. 582 (98 Pac. 145); *The George W. Elder* (D. C.), 159 Fed. 1005. In the light, therefore, of the legislation and decisions upon the subject, we are of the opinion that the term "port" as here used must be deemed to have a recognized and established status, which, taken together with the reference in the title to "bays and rivers navigable from the sea," etc., leaves no room for doubt as to

what was intended by the title. The title of the act is sufficient.

4. The next question demanding attention is whether the port of Coos Bay, being a municipal corporation, comes within the purview of Section 2, Article XI, Constitution of Oregon. As first adopted, this section, so far as applicable to the subject under consideration, reads: "Corporations may be formed under general laws. but shall not be created by special laws, except for municipal purposes." This provision was amended June 4, 1906, to read as follows: "Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. * *" It is apparent from the language used in the section as first in force, when viewed in the light of the reference to "other municipal corporations" in section 9 of the same article that the word "corporation" was employed in its broadest sense, including therein public, municipal, and private corporations, and permitting the formation of municipal corporations by either general or special laws. It denoted such bodies as had formerly been created under that name by charter or special legislative act, and embraced both public and private corporations. *Murphy* v. *Board,* 57 N. J. Law, 245 (31 Atl. 229). And there is nothing in the amendement to indicate that its application was to be restricted. The same meaning accompanied the word into the amendment, in which the only limitation manifested goes to the power of the legislature respecting the subject, as to which the power to form corporations under special laws is denied.

5. In this connection, however, it is urged, with much emphasis, that the authorization of the creation of municipal corporations, as intended by the act of 1909 relating to the incorporation of ports, etc., is only another or indirect way of creating them, and has the same effect as a special law, thereby coming within the inhibition intended by the amendment. By the adoption of the

initiative and referendum into our constitution, the legislative department of the State is divided into two separate and distinct lawmaking bodies. There remains, however, as formerly, but one legislative department of the State. It operates, it is true, differently than before—one method by the enactment of laws directly, through that source of all legislative power, the people; and the other, as formerly, by their representatives—but the change thus wrought neither gives to nor takes from the legislative assembly the power to enact or repeal any law, except in such manner and to such extent as may therein be expressly stated. Nor do we understand that it was ever intended that it should do so. The powers thus reserved to the people merely took from the legislature the exclusive right to enact laws, at the same time leaving it a co-ordinate legislative body with them. This dual system of making and unmaking laws has become the settled policy of the State, and so recognized by decisions upon the subject. *Kadderly* v. *Portland,* 44 Or. 118 (74 Pac. 710: 75 Pac. 222) ; *Oregon* v. *Pac. Sta. T. & T. Co.,* 53 Or. 162 (99 Pac. 427).

6. Subject to the exceptions enumerated in the constitution as amended, either branch of the legislative department, whether the people, or their representatives, may enact any law, and may even repeal any act passed by the other. One of these exceptions relates to the invoking of the referendum and the other to the provision in the amendment quoted, which takes from the legislature the right to create corporations by special laws; otherwise there is no distinction. The statement that corporations shall not, by the legislature, be created by special laws necesarily implies that no limitation is intended to be placed upon the power of the legislative departments of the State, whether asserted by the people through the initiative, or by them through their representatives, to permit the formation of corporations by general laws upon the subject. A general law, within the meaning of

this section, is one by which all persons 'or localities complying with its provisions may be entitled to exercise powers, rights and privileges conferred. ' A special law, on the other hand, is one conferring upon certain individuals or citizens of a certain locality, rights and powers or liabilities not granted or imposed upon others similarly situated; and, measured by this rule, the law under consideration is general. *Farrell* v. *Port of Columbia,* 50 Or. 169 (91 Pac. 546: 93 Pac. 254).

7. The next inquiry relates to the right of the legislative department to delegate to the county court the power to declare the incorporation of the port, etc. The authority granted to provide for the general incorporation laws under consideration, necessarily implies the right to provide for a method of determining, through some of the agencies of the State, when the port has been fully organized. A method analogous to this is provided for bringing into effect a local option law when a vote is taken thereon in any certain locality, and this system of procedure has been upheld by this court. *State ex rel* v. *Richardson,* 48 Or. 309 (85 Pac. 225: 8 L. R. A. [N. S.] 362). That appellant's position on this point is untenable, see *Cook* v. *Port of Portland,* 20 Or. 580, 588 (27 Pac. 263: 13 L. R. A. 533); *Klamath Falls* v. *Sachs,* 35 Or. 325 (57 Pac. 329: 76 Am. St. Rep. 501); *Dallas* v. *Hallock,* 44 Or. 246, 253 (75 Pac. 204). Among the authorities from other jurisdictions holding that powers thus delegated are ministerial, as distinguished from judicial, are *Owners of Lands* v. *People,* 113 Ill. 296; *Elder* v. *Incorporators of Central City,* 40 W. Va. 222 (21 S. E. 738); *Farm Inv. Co.* v. *Carpenter,* 9 Wyo. 110 (61 Pac. 258: 50 L. R. A. 747: 87 Am. St. Rep. 918); *Crawford* v. *Hathaway,* 67 Neb. 325, 367 (93 N. W. 781: 60 L. R. A. 889: 108 Am. St. Rep. 647); *Speer* v. *Stephenson* (Idaho) 102 Pac. 365.

8. It is next maintained that the act is void because of no specific limitation of indebtedness being placed

upon the muicipalities to be created under it. The constitution on the subject (Article XI, § 5) is as follows: 'Acts of legislative assembly incorporating towns and cities shall resrict their powers of taxation, borrowing money, contracting debts, and loaning their credit." Section 10 of the same article provides: "No county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars. * * " That the corporation under consideration does not come within the word "county" as used in section 10, above quoted, is manifest, and it has been heretofore held by this court that it is not included in the words "towns and cities (*Farrel* v. *Port of Portland,* 52 Or. 582 [98 Pac. 145]), from which it is clear that no limitation is placed upon indebtedness to be incurred by municipalities of this class.

9. The question suggested, as to whether the district is likely to abuse the privilege in this respect, is legislative, and not judicial. It is not for the courts to say whether legislation is wise or unwise, reasonable or unreasonable, just, unjust, or oppressive. That function is for the legislative department only. For the courts to assume this prerogative would be dangerous in the extreme, as they, and not the people, would be virtually the framers of the constitution. It is the duty of the judicial departments to determine what the law is; not what it should have been. In determining the validity of an act we can look only to the power under the constitution of the lawmakers by whom it was passed, and not to the effect of the exercise of their constitutional authority.

10. This brings us to another and more difficult inquiry, which concerns the effect of including within the boundaries of the territory under consideration the incorporated towns of North Bend, Marshfield, East Marshfield, and Empire City, in one of which a majority voted against the organization of the port. This inclusion, it is main-

tained, is unconstitutional, in that the effect thereof is not only to amend and repeal parts of the charters of the municipalities thus included in violation of the Constitution of Oregon, Article XI, Section 2, as amended, but must necessarily result in imposing upon them indebtedness and taxes beyond the limitations prescribed in the sections last quoted. To begin, let it be remembered that municipal corporations of the class under consideration do not come within those designated as counties, cities, or towns, and that it was intended that municipalities other than those enumerated might be created, is obvious from the language used in section nine of the same article, namely: "No county, city, town, or other municipal corporation," etc. The clause "other municipal corporation" clearly implies and indicates that the framers understood and recognized that there may be corporations other than those enumerated, of which we have school districts, irrigation districts, road districts, drainage districts, and ports, such as the Port of Portland, etc. Since, therefore, as above held, provision may, under the constitution, be made by general laws for the incorporation of a municipality by the people of any certain locality, such power or right would become futile if the boundaries of any district thus organized must be restricted in such manner as to exclude all municipalities other than the one thus created. The right to form the larger municipalities must of necessity carry with it the power to include those more limited in territory regardless of the proportionate increase in the indebtedness and taxation to follow that may necessarily accrue to the included towns by reason thereof. The limitation placed upon the corporations enumerated applies only to each standing as a separate and distinct political division, and not to another and larger municipality of which they may form but an integral part. The entire constitution with amendments must be construed together, and to so interpret them either as to exclude other corporations or to limit their liability

in the manner suggested would be to defeat the very purpose of the provisions therein upon the subject.

11. The act under consideration by permitting the incorporation of ports does not thereby directly attempt to amend the charter of any city or town within the boundaries thereof. Under any view, it may only affect the charters and ordinances of such cities and towns to the extent that they may be in conflict or inconsistent with the general object and purpose for which the port may be organized. This the constitution clearly intended to permit; that is to say, a general law thereunder is provided whereby the people within the municipality created under it, may take such steps in support thereof as may be necessary, even though its success may require, on the part of the included municipalities, a surrender of some of the rights or. privileges previously granted to or acquired by them. Incorporated cities and towns may change or amend their charters at any time in the manner provided by the constitution. The power to do so, however, is derived from the people of the State, and is necessarily limited to the exercise of such powers, rights, and privileges as may not be inconsistent with the maintenance and perpetuity of the State, of which public corporations are but the mere instrumentalities of government. In other words, the powers thus acquired do not rise higher than their source.

12. We find that the constitution, by permitting, through general laws, the exercise by municipalities of greater and more extensive prerogatives for other and different purposes, including the formation of ports, has thereby delegated to such larger districts the right to take such steps as may be essential to the carrying out of the general purpose and object of their creation. The exercise of this privilge does not necessitate the elimination of the city governments, nor of any substantial part of them, within any of the territory included; nor does it in any respect interfere with the general object or

purpose for which the included corporations were established. It may have the effect, it is true, of taking from them the control of wharves and docks, as well as some other privileges, whenever and wherever the exercise thereof becomes inconsistent with the object for which the port is incorporated. This, however, will in no degree take from any of the towns or the inhabitants thereof the exercise of, or prevent them from receiving, any of the benefits, rights, or privileges granted and given through the incorporated port to the rural citizens within the territory created by it, or to the public at large. Moreover, to the extent that the control and management thereof may be assumed by the more extensive municipality, the cities and towns included therein will be relieved of the burden and responsibility of maintaining or operating anything of the kind for the benefit of the public at large. True, the language used in the amendments considered would appear to give to incorporated cities the exclusive control and management of their own affairs, even to the extent, if desired, of legislating within their borders without limit, to the exclusion of the State. But, as stated, these provisions must be construed in connection with others of our fundamental laws, which can but lead to the conclusion above announced; and whatever may be the literal import of the amendments it cannot be held that the State has surrendered its sovereignty to the municipalities to the extent that it must be deemed to have perpetually lost control over them. This no State can do. The logical sequence of a judicial interpretation to such effect would amount to a recognition of a state's independent right of dissolution. It would but lead to sovereigntial suicide. It would result in the creation of states within the state, and eventually in the surrender of all state sovereignty— all of which is expressly inhibited by Article IV, § 3 of our national constitution. Power to enact local legislation may be delegated, but this of necessity, whether stated

or not, is always limited to matters consonant with, and germane to, the general purpose and object of the municipalities to which such prerogatives may be granted.

13. Municipalities are but mere departments or agencies of the State, charged with the performance of duties for and on its behalf, and subject always to its control. The State, therefore, regardless of any declarations in its constitution to the contrary, may at any time revise, amend, or even repeal any or all of the charters within it, subject, of course, to vested rights and limitations otherwise provided by our fundamental laws. This, under the constitution as it now stands, may be done by the legislature through general laws only, and the same authority may be invoked by the people through the initiative by either general or special enactments; only the legislature being inhibited from adopting the latter method.

Our attention is also called to the inclusion within the boundaries of the port what is known as the "Ten-Mile District." This, it is contended is irregular, because situated within a separate and distinct drainage basin. Since the port as incorporated does not include all of the county, nor extend "beyond the natural watershed of any drainage basin whose waters flow into another bay, estuary, or river navigable from the sea situate within such county," the inclusion therein of the "Ten-Mile District" is not inimical to any of the provisions of the act under which it is created.

Other points were suggested, but suffice to say, we have examined all the questions presented by the record, and find no error in the conclusion reached by the court below.

The decree is therefore affirmed.          AFFIRMED.