HALE v. SENGSTACKEN et al.

(Circuit Court, D. Oregon. December 11, 1911.)

No. 3,660.

MUNICIPAL CORPORATIONS (§ 7*)—PORTS—"DRAINAGE BASIN."

Under the Oregon act (Laws 1909, p. 78) which provides for incorporation of ports, and that where the limits of a port do not include an entire county they shall not extend beyond the natural watershed of any drainage basin whose waters flow into another bay, estuary, or navigable river, the drainage basin of a bay comprises all its arms and inlets, and land situated on the watershed of a slough constituting an arm of the bay was properly included in the territory of a port established on the bay.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 7.*]

In Equity. Bill by A. H. Hale against Henry Sengstacken and others. On demurrer to the bill. Demurrer sustained.

Dolph, Mallory, Simon & Gearin, for complainant.
Cassius R. Peck, for defendants.

WOLVERTON, District Judge. This is a suit to enjoin the defendants, including the port of Coos Bay, from exercising the power of taxation, whereby the complainant's property is being taxed for the use and benefit of the port. Many objections are urged against the validity of the act of the Legislature authorizing the organization of the port, and the regularity of the organization itself. All the questions, however, which are sought to be presented and settled in this case, have been adjudicated in the state court, except one which relates to the natural watershed of the drainage basin of Coos Bay. The bill of complaint is challenged by a demurrer, and this is the only question now presented for determination.

The bill shows that the complainant is the owner of certain real property situated, as it is alleged, "upon the watershed of what is known as 'South Slough,' the south inlet putting into Coos Bay at the extreme west end thereof, where the same puts out into the ocean." And it is further alleged that complainant is not interested in the improvement of the portion of Coos Bay situate on the Upper Bay and that it would be grossly unjust to permit complainant's property to be taxed for such an improvement.

---

The act of the Legislative Assembly of the state of Oregon (Laws 1909, p. 78) under which the taxation complained of is sought to be levied is entitled:

"An act to provide for incorporation under general law of ports in counties bordering upon bays or rivers navigable from the sea or containing bays or rivers navigable from the sea, and to provide for the manner of incorporating such ports and defining the powers of ports so incorporated and declaring an emergency."

The first section provides that:

"Municipal corporations designated as ports may be incorporated in counties bordering upon bays or rivers navigable from the sea or containing bays or rivers navigable from the sea in manner as in this act hereinafter provided."

The second section, after prescribing the form of petition for incorporating the ports, provides that:

"Where a petition is filed for the incorporation of a port under the provisions of this act, the territorial limits of which do not include such county as a whole, the limits proposed by such petition shall not extend beyond the natural watershed of any drainage basin whose waters flow into another bay, estuary or river navigable from the sea situate within such county."

. Now, it is contended that South Slough extends beyond the natural watershed of the drainage basin of Coos Bay, or, in other words, that South Slough constitutes a drainage basin within itself, and separate and distinct from the drainage basin of Coos Bay, and therefore it was not intended that the lands lying within the watershed of South Slough should be taxed for improvements in Coos Bay, or, to be more explicit, in Upper Coos Bay.

To understand the matter fully, it is necessary to describe Coos Bay and the waters tributary thereto. The bay is a body of water navigable from the sea. It is fed by a number of estuaries and streams extending in different directions from it, some a considerable distance inland. Among these may be mentioned North Slough, which enters Coos Bay from the extreme north. This slough is navigable from the bay a distance of about 2½ miles. Next south of North Slough, and entering the bay near its mouth, is Haynes Slough, which a stream bearing no name enters at the head. The slough is navigable for a distance of approximately 3½ miles from the bay. Another slough enters this, known as "Larsen Slough," which is navigable from the former for a distance of a mile and half. Some two miles south of the mouth of Haynes Slough, Kentuck Slough puts into the bay, extending therefrom in a northeasterly direction. This is navigable for 2½ miles. South of Kentuck Slough a mile or more Willonch creek, a nonnavigable stream, puts into the bay. Coos river runs into the bay at one of the southeasterly extensions, and is navigable to Alleghany, being a distance of 8 or 10 miles. · Catching Slough enters near the mouth of Coos river, extending inland in a southerly direction, and is navigable for a distance of 6 miles. Isthmus Slough puts in to the west a mile or more; extends inland in a southerly direction, and is navigable from the bay about 8 miles. Another slough, called "Coalbank Slough," which is navigable for a distance of 4 miles, enters at the mouth of Isthmus Slough. South Slough puts into the bay near

its junction with the sea, and extends in a southerly direction, being navigable for a distance of 5 miles or more. All these sloughs, entering from whatever source or direction, are merely arms of Coos Bay, and Coos river is its chief tributary.

It should be further stated that Coos Bay, from its channel entering the ocean, broadens and extends by a channel from a half mile to a mile and a quarter in width in a northeasterly direction for a distance of 7 or 8 miles, perhaps more, from which point arms extend northerly and northeasterly by North, Haynes, and Kentuck Sloughs, above described. But the larger body of the bay extends from here in a southerly or southeasterly direction for the distance of 4 or 5 miles, and it is at the southern extremity of the body that Coos river and the other sloughs mentioned, except South Slough, enter. South Slough has a number of tributaries running into it from the east, as have Isthmus and Coalbank Sloughs from the west. Pony creek also runs into an estuary of the bay from the west. So that the tributaries of South Slough run in the opposite directions from the tributaries of the two other sloughs just mentioned, including Pony creek, while their sources approach near to each other in the higher lands. Hence it is contended that South Slough constitutes a drainage basin within itself, distinct from the drainage basin of Coos Bay proper.

It was evidently the purpose and intendment of the Legislature to confer ample authority upon the ports, when duly organized, to make effective improvements in the bays and waters over which they are given jurisdiction. The improvements may extend to the harbors within the bay, or to the improvement of the channel to the sea, so as to insure greater safety to navigation. An entire bay may be improved through the agency of the incorporation or port established in pursuance of the act, and it was probably the purpose, in establishing the port of Coos Bay, to improve all the harbors and the channel to the sea of Coos Bay.

The language of the statute is, where the limits of the port do not include an entire county, that they "shall not extend beyond the natural watershed of any drainage basin whose waters flow into another bay, estuary or river navigable from the sea." This was to prevent, perhaps, the combining of two or more ports of entry from the sea, unless found in the same county in one scheme for improvements. A basin in physical geography signifies:

"(a) A circular or oval valley, or depression of the surface, the lowest part of which is generally occupied by a lake, or traversed by a river. (b) The entire tract of country drained by a river, or to a sea or lake." Webster's Dictionary.

The Century Dictionary gives it as:

"The area drained by a river. The term is ordinarily used only when speaking of a large river, and then includes the entire area drained by the main stream and its tributaries. The line separating two river systems from each other is the watershed."

The statute seems, for the designation of a drainage basin, to constitute a bay or estuary, as well as a river, an integer, and the water-

sheds of these integers must be determined by the streams and their tributaries which flow into them. If we speak of a bay, the term would naturally include the arms and inlets thereof. So that the whole bay, together with the streams and their tributaries by which it is fed, would constitute the drainage basin, and the watershed thereof all the territory from which the waters flow into the basin, and consequently into the bay. The same with the estuary. Such I believe to be the intendment of the statute. South Slough, therefore, being but an arm of Coos Bay, does not constitute a separate integer for a drainage basin. The drainage basin of Coos Bay comprises all its arms and inlets, including South Slough and its tributaries, as well as Coos river and its tributaries, and all other sloughs and their tributaries entering Coos Bay.

It would seem that the Supreme Court of the state had this idea of the drainage basin of Coos Bay when it decided the case of Straw v. Harris, 54 Or. 424, 103 Pac. 777. The objection was there made that Ten-Mile creek constituted a separate drainage basin, but the court said of the situation:

"Our attention is called to the inclusion within the boundaries of the port of what is known as the 'Ten-Mile District.' This, it is contended, is irregular, because situated within a separate and distinct drainage basin. Since the port as incorporated does not include all of the county, nor extend 'beyond the natural watershed of any drainage basin whose waters flow into another bay, estuary, or river navigable from the sea situate within said county,' the inclusion therein of the 'Ten-Mile District' is not inimical to any of the provisions of the act under which it is created."

I am of the opinion, therefore, that the demurrer to the bill should be sustained; and it is so ordered.