Argued October 20, decided November 9, rehearing denied April 12, 1910.

## MAYHEW *v.* CITY OF EUGENE.

[104 Pac. 727.]

MUNICIPAL CORPORATIONS — NUISANCE — INTOXICATING LIQUORS — AUTHORITY OF CITY—REVIEW BY COURTS.

1. The city of Eugene, being authorized by Sp. Laws 1905, p. 251, § 48, subd. 8, to prevent, regulate, prohibit, and remove nuisances, and declare by ordinance what shall constitute a nuisance, had power to declare that the maintenance in the city of a house for the unlawful sale of liquors or the carrying on of such business was a nuisance under the rule that the city's declaration that a particular thing shall be a nuisance under such general authority will not be overruled by the courts unless arbitrary, unjust, and manifestly wrong.

INTOXICATING LIQUORS—LOCAL OPTION LAW—ADOPTION—EFFECT.

2. Where local option has been adopted in any city or incorporated town, all laws or ordinances conflicting therewith are suspended.

MUNICIPAL CORPORATIONS—CITY ORDINANCES—STATE LAW—PRIORITY.

3. Where an act is prohibited by State law, a city ordinance previously in force cannot be invoked to permit the same act.

INTOXICATING LIQUORS—LOCAL OPTION LAW—NUISANCE.

4. There is no conflict between the local option law and a city ordinance declaring a place in the city maintained for the illegal sale of liquor to be a nuisance.

CRIMINAL LAW—EVIDENCE—JUDICIAL NOTICE.

5. The Supreme Court will take judicial notice that the State University is located at Eugene in determining the validity of an ordinance of that city declaring the maintenance of a business for the unlawful sale of liquor therein to be a nuisance.

CRIMINAL LAW—FORMER. JEOPARDY—NATURE OF OFFENSE.

6. Where defendant was convicted of violating the local option law prohibiting the sale, exchange, or giving away of intoxicating liquors within a city in which the law was in force, such conviction was no bar to a subsequent prosecution for violating a municipal ordinance punishing the carrying on of the business of selling intoxicating liquor within the

city or devoting any building or premises thereto, and declaring the carrying on of such business to be a nuisance; the offenses, though established by the same act of sale, not being the same.

MUNICIPAL CORPORATIONS—CITY ORDINANCES—VIOLATION—COMPLAINT.

7. Under Section 90, B. & C. Comp., providing that in pleading a city ordinance it shall be sufficient to refer to it by title and the date of its approval, a complaint for violating an ordinance providing that the maintenance of a business for the unlawful sale of liquor shall constitute a nuisance, giving the title of the ordinance, its number of the particular section which defendant was claimed to have violated, and charging in detail the acts constituting such violation, was sufficient after verdict.

MUNICIPAL CORPORATIONS—POLICE POWER—SENTENCE — TIME — STATUTES.

8. Under Section 2273, B, & C. Comp., providing that, when the defendant pleads guilty or its convicted, the justice of the peace must give judgment as prescribed by law, and under Eugene City charter (Sp. Laws 1905, p. 246, § 18), providing that proceedings in the recorder's court shall be governed by the laws controlling criminal actions before justices of the peace, and Section 1431, B. & C. Comp., providing that two days shall elapse between the receiving of a verdict and the prouncing of sentence, does not apply to a conviction in the recorder's court of such city.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE MCBRIDE.

An ordinance of the city of Eugene contained the following section:

"Sec. 6. That all places within the limits of the city of Eugene wherein intoxicating liquors are sold, bartered or given away, in violation of this ordinance, or where idle or dissolute persons are permitted to congregate for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale or barter in violation of law or this ordinance, are hereby declared to be a common nuisance, and any person, firm or corporation maintaining any such nuisance within the city of Eugene shall be deemed guilty of a misdemeanor," etc.

Defendant was arrested, charged with a violation of this section. That portion of the complaint necessary to the decision of this question before us is as follows:

"Charles Mayhew is accused by this complaint with a violation of section 6 of Ordinance 672 of the city of Eugene entitled 'An ordinance declaring all places within the city of Eugene where intoxicating liquors are sold,

bartered, or given away in violation of law, or where idle or dissolute persons are permitted to congregate for the purpose of drinking intoxicating liquors to be common nuisances; to re-enact sections 1, 2, 3, 4, and 6 of Ordinance No. 653 entitled "An ordinance to regulate cigar stores, billiard parlors, soft drink parlors, and places, restaurants, and other like places of business and to prohibit the sale of intoxicating liquors in the city of Eugene"; to repeal sections 5 and 7 of said Ordinance 653 and all ordinances and parts of ordinances in conflict herewith,' committed as follows: That within the corporate limits of the said city on the 19th day of December, 1907, said Mayhew kept and maintained a common nuisance, in this, that being then and there the lessee and in possession of those certain premises and buildings in said city known as No. 547 Willamette street, he did then and there knowingly and willfully engage in the business of selling, and did then and there sell from and on said premises intoxicating liquors for beverage purposes in violation of law, to wit, the local option law of the State of Oregon, which said law was then and there in full force and effect by this," etc.

The appellant entered two pleas—former jeopardy and not guilty. The plea of former jeopardy is as follows:

"Comes now the defendant, and says that he ought not to be prosecuted in the above cause because he represents that heretofore, to wit, on the 21st day of December, 1907, a complaint duly verified by the affidavit of C. F. Dennie, private prosecutor, was filed in the office of R. S. Bryson, Esq., justice of the peace for the district of Eugene, Lane County, alleging that Charles Mayhew had committed the crime of selling intoxicating liquors in Lane County, Oregon, in violation of the local option law, committed as follows: That he, the said Charles Mayhew, on the 19th day of December, 1907, in the county of Lane and State of Oregon, then and there being, did then and there wrongfully and unlawfully sell intoxicating liquor to C. F. Dennie by then and there unlawfully and wrongfully selling one pint bottle of intoxicating liquor to said C. F. Dennie for fifty cents, lawful money of the United States of America, contrary to the provisions of the local option liquor law, and after

the sale of intoxicating liquor within Lane County had been duly prohibited."

Then follows a statement that upon such charge he had been duly arrested, tried, convicted, and sentenced; that he is the same person, and that this is the same offense and the identical act for which he was so convicted in the justice's court. The attorneys stipulated as to the state of the record in the justice's court. Defendant offered evidence to show the identity of person and of the offense, in order to sustain his plea of former jeopardy, but the evidence was rejected, and the court refused to submit that issue to the jury. Defendant was found guilty and took a writ of review to the circuit court, which affirmed the judgment of the recorder's court, and from that decision defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. John M. Pipes* and *Mr. George A. Pipes*, with an oral argument by *Mr. George A. Pipes*.

For respondent there was a brief over the names of *Mr. Louis E. Bean* and *Mr. S. D. Allen*, with an oral argument by *Mr. Allen.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. It is contended that the city of Eugene had no power under its charter to pass the ordinance under which defendant was convicted. Subdivison 8 of section 48 of the city charter of Eugene provides that the city shall have power "to prevent, regulate, prohibit and remove nuisances, and to declare by ordinance what shall constitute the same." Sp. Laws 1905, p. 251, § 48, subd. 8. Under this power the great weight of authority is to the effect that so long as the definition of a nuisance in a charter is not clearly arbitrary and unjust, and manifestly wrong, the courts will uphold it. 2 Smith's Modern Law of Municipal Corporations, § 1106, and

cases there cited.   The maintaining in a city of a house for the unlawful sale of liquors or carrying on the business is from its very nature a public nuisance, and the city has a right to so declare it.   *Meyer* v. *State,* 42 N. J. Law, 145, 156; *Hammond* v. *King,* 137 Iowa, 548 (114 N. W. 1062).

2. It is also contended that, the local option law being in force in the city of Eugene, the city has no authority to legislate in any way against the sale of liquor.   We have already held that, when local option has been adopted in any city or incorporated town, all laws or ordinances conflicting therewith are suspended.

3. In other words, as long as the State law prohibits an act, the city law previously in force cannot be invoked to permit the same act.

4. There is no conflict between the local option law and the ordinance declaring a place where liquors are sold to be a nuisance.   The authorities are conflicting as to whether a municipality can make a crime which is punishable by the laws of the State also an offense against its ordinances; some states—notably Georgia— holding steadfastly that ordinances punishing offenses covered by state laws are inoperative.   But there can be no room for doubt that, where the offense against the State is also peculiarly an offense against the peace and good order of the city, ordinances punishing it are valid and will be upheld, if with'n the terms of the charter.   Judge COOLEY states the rule as follows: "An act may be a penal offense under the laws of the State, and further penalties, under proper legislative authority, be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other." Cooley, Consti. Lim. (7 ed.) 279 and notes. This view is controverted in Smith's Modern Law of Municipal Corporations, but the great weight of authority seems to be with the doctrine enunciated by Cooley.

Mr. Smith cites *Walsh* v. *City of Union,* 13 Or. 589 (11 Pac. 312), as sustaining his contention, and, in fact, gives it the position of a leading case, though a careful reading of that decision indicates that the view of the court was exactly opposite from the view taken by the text-writer. The charter of the city of Union gave the council power to punish any person "who should create any 'noise or disturbance' upon any street in the city." The city passed an ordinance in the following language: "Any person or persons, who shall draw any dangerous or deadly weapon upon the person of another * * shall be punished," etc. Walsh was arrested upon a complaint charging him with a violation of this ordinance. He was not charged with having made a "noise or disturbance" upon the streets, and the court very properly held that, as the charter had not granted the city power to punish for an assault with a dangerous weapon, the ordinance was void, but they add significantly: "Under an ordinance enacted in pursuance of such power to punish those who should create any disturbance in the streets of the city, etc., it is not doubted but what the conduct alleged in the complaint would be a punishable offense. * * Nor is this objection made upon the ground that an offense committed against two jurisdictions cannot be punished in each of them." So the case cited decides these points: (1) That an assault with a dangerous weapon cannot be punished as such under power to punish for "creating a noise or disturbance"; (2) that under a power granted to punish for "creating a noise or disturbance" the city council would have power to include within the matters which go to make such disturbance the act of assaulting another with a dangerous weapon. There is also a distinct intimation that the court did not wish to be understood as holding that a crime could not be committed against two jurisdictions by the same act.

Again, it is to be noticed that the local option law is not broad enough to cover the offense for which de- fendant in this case was tried before the city recorder of Eugene. The offense created by the local option law consists in selling, exchanging, or giving away intoxi- inside of a building, is a separate and distinct offense. cating liquors. Each sale, whether upon the street or The ordinance in question goes further, and punishes the carrying on of the unlawful business or devoting any building or premises to that purpose. It is not incon- sistent with the State law or subversive to it. It declares the carrying on of the unlawful business a nuisance and punishes it as such.

5. This court will take judicial notice that by the laws of this State the State University is located at Eugene, and while, under all circumstances, an unlawful tippling house is undesirable in a community, it is peculiarly so in a college town, where are congregated a large number of young men not under paternal restraint, and separated from those home influences which make so much for sobriety. A business which might be tolerated in other communities would be an intolerable nuisance in a college town. We conclude, therefore, that the ordinance is authorized by the charter, and, in view of the situation at Eugene, that it is a just and reasonable one.

6. Much of what has been heretofore said applies forcibly to defendant's next objection, namely, the failure of the court to submit defendant's plea of former jeopardy to the jury. The offense of making a single sale of liquor is not identical, and cannot be identical with that of maintaining a nuisance by carrying on the business, and the plea was bad on its face. The intimation in *Walsh v. Union,* 13 Or. 589 (11 Pac. 312), to the effect that assault with a dangerous weapon might properly be included in an ordinace for making a disturbance on the

street and punished accordingly is reinforced by the opinion of this court in *State* v. *Stewart,* 11 Or. 52, 238 (4 Pac. 128). Judge LORD, speaking for the court, and quoting from Judge GRAY in *Morey* v. *Commonwealth,* 108 Mass. 434, says: "The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and, if each statute requires proof of an additional fact, which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Continuing, Judge LORD says: "The offense charged in the former and in the present case are not only distinct, but the evidence required to support the one would fall far short of establishing the other, and in such a case Mr. Chitty says: 'It is inconsistent with reason, as it is repugnant to the rules of law, to say that the offenses are so far the same that an acquittal of one will be a bar to the prosecution of the other." So we consider the ruling of the lower court not only in accord with reason and justice, but sustained by the former views of this court, as expressed in the opinion of one of its most able and learned justices.

7. Another objection is that the ordinance was not plead in the manner required by Section 90, B. & C. Comp., which is as follows:

"In pleading an ordinance or enactment of any incorporated city, town or village, or a right derived therefrom, in any action, suit, or proceeding, in any of the courts of this State, including the courts of any such incorporated city, town, or village, it shall be sufficient to refer to such ordinance or enactment by its title and the date of its approval, and the court shall thereupon take judicial notice thereof."

In Pomeroy v. Lappeus, 9 Or. 363, this court held that in a proceeding begun originally in the circuit court

it was not sufficient to plead an ordinance by its number, title, and date of enactment, but that the ordinance must be set out in full. The next case was *Nodine* v. *City of Union,* 13 Or. 587 (11 Pac. 298), in which the appellant was convicted in the recorder's court for violation of a city ordinance. The ordinance was described in the complaint by mere reference to its number. The defendant demurred to the complaint as not stating facts sufficient to constitute an offense, and on appeal the demurrer was sustained by the court. It will be seen that that case differs from this, in that in this case the full title of the ordinance is given, the number of the ordinance, and the number of the particular section which the defendant is accused of violating. It is probable that Section 90, B. & C. Comp., was passed with a view of preventing such failures of justice as arose from the neglect or carelessness of pleaders in the cases above mentioned. Recent decisions of courts of other states, and the better opinion of modern writers, seem to be that, where the complaint sets out the acts declared by the ordinance to be an offense in specific language, no specific reference to the ordinance by title number or recital is necessary, but that the municipal court will take judicial notice of it to the same extent as the other courts of the State take such notice of the general criminal statutes. In *Portland* v. *Yick,* 44 Or. 439, 444 (75 Pac. 706, 708: 102 Am. St. Rep. 633), the court says: "The municipal courts will take judicial notice of the ordinances of the municipality and of such journals and records of the law-making body as affect their validity, meaning and construction in like manner and for like purposes as the courts of the State take judicial cognizance of the public statutes of the State, and, in the event of an appeal to the circuit court, although by the rules of law the case is to be tried *de novo,* the circuit court will take like judicial notice of such ordinances as the municipal

courts"—citing *City of Soloman* v. *Hughes,* 24 Kan. 211;
*Downing* v. *City of Miltonvale,* 36 Kan. 740 (14 Pac.
281) ; *State* v. *Leiber,* 11 Iowa, 407; *Town of La Porte
City* v. *Goodfellow,* 47 Iowa, 572; *Town of Moundsville*
v. *Velton,* 35 W. Va. 217 (13 S. E. 373). The previous
decisions of this court upon this subject are not referred
to in the decision nor in the briefs of counsel filed in
that case, and an examination of the record shows that
the question of the proper method of pleading an ordin-
ance was in no way involved. The question then before
the court was whether the court would take judicial
notice of the journals and records of a city council in
determining whether an ordinance had been regularly
passed and this court held that course to be correct.
There is nothing in the opinion indicating any intent
on the part of the court to overrule its previous holdings
in regard to the statutory provisions respecting pleading
a municipal ordinance, and they must be assumed
still to be the law in this State. But in every case pre-
viously decided the sufficiency of the pleading had been
challenged by motion or demurrer. In this case no ob-
jection was made to the sufficiency of the pleading. The
complaint here gives the title of the ordinance in full,
and it is sufficiently comprehensive to set forth the gen-
eral scope of the ordinance. It also gives the number of
the ordinance and the number of the particular section
which defendant was charged with violating, and sets
forth in detail the particular acts committed by defend-
ant which it claimed constituted such violation. The
complaint may not be as definite as the statute requires,
but mere indefiniteness cannot be a ground for objection
after verdict. We think that it is too late to question
a complaint as full as this one is after the verdict, and
that this objection should be overruled.

8. It is also urged that the court erred in pronouncing
sentence within six hours after verdict was rendered.

We do not think Section 1431, B. & C. Comp., requires two days to elapse between the time of receiving the verdict and pronouncing sentence. Section 2273, which provides the method of procedure in justices' courts, reads as follows:

"When the defendant pleads guilty, or is convicted, either by the justice or jury, the justice must give judgment thereon for such punishment as may be prescribed by law for the crime."

The charter of Eugene provides that the proceedings in the recorder's court shall be governed by the laws controlling criminal actions in the justice's court. Eugene Charter, c. 4, § 18; Sp. Laws 1905, p. 246. Neither justices' courts nor recorders' courts have regular sessions, but proceed according to the exigencies of the business before them, and it certainly was never the intention of the legislature that they should be kept in session for 48 hours after the trial of each case for the sole purpose of pronouncing judgment upon offenders.

The judgment of the lower court is affirmed

AFFIRMED.