Argued and submitted May 2, decided May 31, 1911.

## STATE v. SCHLUER.

[115 Pac. 1057.]

INTOXICATING LIQUORS—LOCAL OPTION LAW—POWER OF MUNICIPALITY —SUSPENSION.

1. When the local option law, Sections 4920-4937, L. O. L., is made effective in any incorporated city or town by a majority vote cast at an election regularly held, the power delegated to the municipality to license the sale of intoxicating liquors is suspended, and, when so suspended, can be revived only by a majority vote regularly cast against prohibition.

MUNICIPAL CORPORATIONS—CHARTER—AMENDMENT—"CRIMINAL LAWS."
2. Under Section 2, Article XI, of the Constitution, prior to its amendment November 8, 1910, providing for the enactment or amendment of corporate charters so long as the provisions thereof are not violative of the constitutional or criminal laws of the State, a provision of a charter in contravention of the criminal law, whether relating to felonies or misdemeanors, was invalid; the term "criminal laws" including all general statutes in force in the State, whether relating to acts *malum in se* or *malum prohibitum*, or to acts constituting felonies or misdemeanors.

INTOXICATING LIQUORS—LOCAL OPTION LAW—AMENDMENT—REPEAL.
3. The local option law (Sections 4920-4937, L. O. L.), though enacted by the people under the initiative power, is only a statute, and is subject to express or implied modification and repeal.

CONSTITUTIONAL LAW—CONSTITUTION—AMENDMENT—INITIATIVE PETITION.
4. Authority to amend the constitution being reserved to the people under Section 1, Article IV, of the Constitution, and by Section 1, Article XVII of the Constitution, it may be exercised by vote on an initiative petition.

CONSTITUTIONAL LAW—CONSTITUTIONAL PROVISIONS—APPLICATION.
5. Under the initiative and referendum system prevailing in Oregon, a clause in the organic act providing for its amendment controls only the legislative assembly.

STATUTES—IMPLIED REPEAL.
6. One statute will not be held to repeal another by implication unless the incompatibility between the two is so apparent that both enactments cannot remain in force; the rule being that, if the latter can be construed as a modification only of the prior law, the two must be construed together.

CONSTITUTIONAL LAW—OPERATION AS TO LAWS PREVIOUSLY IN FORCE.
7. Since by Section 2, Article XI of the Constitution, as amended November 8, 1910, exclusive authority to license, regulate, suppress, or prohibit the sale of intoxicating liquors is vested in every municipality, such power excluded all subsequent interference therewith by voters residing outside the city limits, and therefore impliedly repealed so much of the local option law (Sections 4920-4937, L. O. L.) as permits "registered voters of any county" to petition for a prohibition election in the entire county or to vote on the question in any part thereof, including an incorporated city or town, and also so much as declares that the provisions of that law are enforceable in any precinct which "may lie within and partially without an incorporated city or town."

CONSTITUTIONAL LAW—OPERATION AS TO LAWS PREVIOUSLY IN FORCE —LOCAL OPTION LAW.
8. Section 2, Article XI of the Constitution, as amended November 8, 1910, giving cities exclusive control of the prohibition and regulation of the sale of intoxicating liquors, impliedly amended the local option law (Section 4933, L. O. L.), so as to authorize an election to be held on the question of prohibition in a ward or precinct of a city notwithstanding prohibition had carried in the entire county or in a subdivision thereof,

when the latter district embraces a precinct wholly within an incorporated city or town.

INTOXICATING LIQUORS—LOCAL OPTION LAW—AMENDMENT—CONSTITU-
TION.
9. Under Section 2, Article XI of the Constitution, as amended November 8, 1910, conferring on municipalities exclusive jurisdiction to regulate and prohibit the sale of intoxicating liquors, subject to the provisions of the local option law, the right so granted is necessarily governed by all such provisions, so far as applicable, so that, in order to change an order for or against prohibition, the petition therefor must be presented to the county court, which must order an election to be held to determine the question, notwithstanding the amendment provided that the municipality shall "within its limits" be subject to the local option law.

INTOXICATING LIQUORS—LOCAL OPTION LAW—ELECTION—"EXCLUSIVE."
10. Section 2, Article XI, of the Constitution, as amended November 8, 1910, provides that the legislative assembly shall not enact, amend, or repeal any city charter, but grants such power to the legal voters of every city or town, subject to constitutional and criminal law of the State, together with the exclusive power to license, regulate, control, suppress, or prohibit the sale of intoxicating liquors therein, but such municipality shall within its limits be subject to the provisions of the local option law of the State. *Held*, that the word "exclusive," as so used, had not the force usually given to that adjective, and that, as the restriction contained no exception, an employment of the power so conferred was subject to all the consequences that may have resulted from the adoption of the local option law, so that a prohibition order made in the county as a whole could not be modified or vacated, except by subsequent vote of the qualified voters of an incorporated city or town therein cast against prohibition at an election regularly held for that purpose in the municipality.

From Wallowa:   JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE MOORE.

The defendant, E. T. Schluer, was charged with the crime of selling intoxicating liquor in Wallowa County March 10, 1911, in violation of the local option law, which, it is alleged, was then in force in the entire county. A plea of not guilty having been entered, the cause was tried upon an agreed statement of facts, in substance, that the city of Joseph is duly incorporated and by its charter, which was in force November 8, 1910, and thereafter continued effective, is authorized to license the sale of intoxicating liquors; that Joseph precinct includes such municipality and adjoining territory, about 90 per cent of the legal voters of which reside in the city; that local option elections were regularly held in the entire county

June 15, 1906, June 6, 1908, and November 8, 1910, and, a majority of all the votes cast having respectively been in favor of prohibition, orders to that effect were duly made; that the ballots cast on that question in such precinct at the first election were 71 for prohibition and 57 against it, at the second, 122 approved the measure, and 116 rejected it, and, at the third, 91 favored the proposition and 165 opposed it; that no other prohibition election was ever held in such precinct or in the city; that on January 3, 1911, an ordinance was duly enacted whereby the sale of intoxicating liquors was authorized by the city, pursuant to which a license was issued to the defendant, who, relying thereon, sold intoxicating liquor within the municipal limits at the time stated and to the persons named in the charge.

Based on such stipulation, defendant's counsel requested the court to direct a verdict of not guilty, for that the local option law was not in force in the city of Joseph by reason of the amendment of Section 2 of Article XI of the Constitution of Oregon, ratified November 8, 1910, and that the license relied upon afforded a complete defense to the action. The request was refused, and the jury were instructed that the city under the facts stated was powerless to authorize the sale of intoxicating liquors. The defendant, having been found guilty, appeals from the resulting judgment.                        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Coovert & Stapleton* and *Mr. A. M. Runnells,* with an oral argument by *Mr. E. E. Coovert.*

For the State there was a brief over the names of *Mr. Francis S. Ivanhoe,* district attorney, and *Mr. Andrew M. Crawford,* Attorney General, with an oral argument by *Mr. Ivanhoe.*

MR. JUSTICE MOORE delivered the opinion of the court.
. The question to be considered is whether or not the change of the organic law referred to relieved the city

of Joseph from the order of prohibition in force in Wallowa County as a whole so as to permit the municipality, pursuant to its charter and an ordinance, to license the sale of intoxicating liquors within its limits when no local option election was ever held in the city alone, but in a precinct that included such municipality. The altered section is as follows:

"Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon (and the exclusive power to license, regulate, control, or to suppress or prohibit the sale of intoxicating liquors therein is vested in such municipality; but such municipality shall within its limits be subject to the provisions of the local option law of the State of Oregon)." L. O. L., p. 25.

The change made November 8, 1910, consists in the addition of the words included within the parentheses above noted. The local option law referred to is set forth in the code as Sections 4920-4937, L. O. L. By that act it devolves upon a county court upon the receipt of a proper petition therefor to order an election to be held in the entire district described in the application. The territory which may be included therein is an entire county, or a subdivision thereof which contains two or more contiguous precincts, or it may be composed of a single precinct.

"Such subdivision of a county, or a precinct of a county, may embrace in its limits incorporated towns and cities and portions thereof, or may consist of the whole or a portion of an incorporated city or town, or may lie partially within and partially without an incorporated city or town." Section 4920, L. O. L.

Elections to determine whether or not the sale of intoxicating liquors for beverage purposes is to be prohibited

in any designated territory shall be held only on the first Tuesday after the first Monday in November of any year.

"The elections provided for by this act shall be held at the regular voting place or places within the proposed limits and by the judges and clerks of election appointed and qualified under the general election laws of the State, or if held at the time of a city election, then within said city or town by the judges and clerks appointed and qualified under the charter of such incorporated city or town or under the laws of the State regulating such city or town election, and the returns thereof shall be made in conformity with the provisions of said general election laws. If, under the provisions of this act, an election shall be demanded wholly or in part in any incorporated city or town or any ward or precinct therein, to be held at the time of the city or town election in a year in which there is no general election, then the county clerk shall notify the proper authority of such city or town that such election has been demanded in order that such city or town authority may cause the official ballots to be prepared in accordance with the provisions of this act, and the city auditor, or clerk, or recorder, as the case may be, shall make return to the county clerk of the vote for and against prohibition in the several precincts of said city or town, and thereafter said matter shall proceed as in the case of a general election." Section 4922, L. O. L.

If, at a local option election, a majority of all the votes cast in a county as a whole, or in a subdivision thereof, or in any precinct therein, is for prohibition, the county court must make an order declaring the result of the vote and absolutely prohibiting the sale of intoxicating liquors for beverage. purposes within the prescribed limits.

"The county court shall issue an order of prohibition for each and every subdivision as a whole voting 'for prohibition,' notwithstanding the county as a whole voted against prohibition. * * Thereafter it shall be unlawful to sell or exchange or give away any intoxicating liquor within the territory included in said prohibition order except as in this law provided." Section 4929, L. O. L.

If any election shall have resulted in a majority vote for prohibition in any county as a whole, no election shall

be held in such county upon that question before the day
of the general election following. Section 4931, L. O. L.

"When such second election results against prohibition,
the court shall enter an order setting aside the previous
order enforcing prohibition." Section 4932, L. O..L.

"When prohibition has been carried at an election held
for the entire county, no election on the question of pro-
hibition shall be thereafter held in any subdivision or
precinct thereof until after prohibition has been defeated
at a subsequent election for the same purpose, held for
the entire county, in accordance with the provisions of
this act; nor in any case where prohibition has carried
in any subdivision of any county shall an election on this
question of prohibition be held thereafter in any precinct
of such subdivision until prohibition has been defeated
at a subsequent election held for such entire subdivision."
Section 4933, L. O. L.

It is believed that the foregoing synopsis of, and
excerpts from, the local option law, are sufficient to show
the general scope and purpose of the act, so far as
involved herein. These provisions were rendered appli-
cable to the entire State June 6, 1904, under the initiative
power, and by complying with the terms prescribed could
be put in force in any designated territory, not exceeding
the area of a county: *Hall* v. *Dunn,* 52 Or. 475 (97 Pac.
811: 25 L. R. A. [N. S.] 193; *Gay* v. *Eugene,* 53 Or. 289
(100 Pac. 306).

1. When such statute is made effective in any incor-
porated city or town by a majority vote cast at an election
regularly held, the power delegated to the municipality
to license the sale of intoxicating liquors is suspended:
*Mayhew* v. *Eugene,* 56 Or. 102 (104 Pac. 727). As that
law, after having been put into execution in any desig-
nated district, may be rendered inoperative, it necessarily
follows that the power of a municipal council to license
the sale of intoxicating liquors in any incorporated city
or town, when suspended, could be revived by a majority
vote regularly cast against prohibition. The charter of

Joseph, on November 8, 1910, when Section 2 of Article XI of the Constitution of Oregon was last amended, contained a clause delegating to the council of that city power to license the sale of intoxicating liquors. No amendment of its act of incorporation was therefore necessary, and no alteration thereof was undertaken. An ordinance was enacted, however, January 3, 1911, regulating the manner of licensing the sale of intoxicating liquors in the city, but this ordinance was based upon an express grant of power, theretofore delegated to the council.

2. An examination of Section 2 of Article XI of the organic act, as it existed prior to November 8, 1910, will show that a municipal charter could not be enacted or amended by the legal voters of a city or town, so as to violate the constitution or criminal laws of Oregon: *Baxter* v. *State*, 49 Or. 353 (88 Pac. 677: 89 Pac. 369) ; L. O. L. p. 118. The "criminal laws" thus referred to evidently mean the entire collection of general statutes in force in the State, whether *malum in se* or *malum prohibitum*. As all felonies and general misdemeanors are necessarily comprehended in the phrase "criminal laws," as thus used, it was undoubtedly difficult, without employing many qualifying terms, so to change that clause of the fundamental law as to retain the limitation noted, and yet to render the alteration subservient to the local option law to which no express reference had been made in the first amendment. In formulating the last change in the organic act preparatory to its adoption, it was essential, therefore, to allude particularly to the local option law in order to incorporate its general provisions in the constitution, and in doing so the restriction noted applies only to one criminal law, while the earlier limitation referred to all general statutes of that character. The object of the last amendment was manifestly to forestall any law respecting the sale of intoxicating liquors, the operation of which might be made coextensive with the boundaries

of the State, and also to take the limits of a municipality out of a county, or a subdivision thereof or a precinct therein of which it formed a part and yet to make the incorporated city or town subject to the general provisions of the existing local option law. The reference in the first amendment of Section 2 of Article XI of the Constitution to the "criminal laws" of the State, and the allusion in the last alteration of that section to the "local option law," are not in our opinion so similar in their implication when construed together as to render the latter attempted change nugatory. The various provisions of the altered section should be interpreted in conjunction, and effect should be given to the entire language employed, if possible, rendering each word operative rather than futile. In discussing this principle a learned author says:

"It is scarcely conceivable that a case can arise where a court would be justified in declaring any portion of a written constitution nugatory because of ambiguity. One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together." Cool. Con. Lim. (6 ed.) 72.

3. The local option law, though enacted by the people under the initiative power, is only a statute; and, since the clause of the constitution was amended by an exercise of the same authority, the prior act, like any other law, is necessarily subject to express and implied modification and repeal. It is generally understood that a written constitution affords a guide to legislation, and is therefore of superior authority. Where, however, a reference is made in an organic act to a statute as furnishing a rule of action, what has been regarded as fundamental law is deprived of much of the inviolability usually accorded either to a limitation or a grant of power.

4. Authority to amend the constitution is reserved to the people of Oregon, and this right may be enforced by a vote upon an initiative petition. Section 1, Article IV, and Section 1, Article XVII of the Constitution of Oregon.

5. Under the system now prevailing, a clause of the organic act appears to control only the legislative assembly, since it requires no more effort nor any greater care to amend a clause of the constitution than it does to enact, alter, or repeal a statute, for a majority vote is sufficient to give sanction to a bill, and no greater vote is required to amend the fundamental law. Section 1, Article XVII, of the constitution. The general rule is that a liberal construction should be given to legislative enactments because they are often hastily drawn by persons unskilled in the use of technical legal expressions, are frequently conflicting, and sometimes trench upon clauses of the organic law. A strict construction, however, is usually applied to provisions of a constitution, on the ground that great care has been exercised by experienced persons in framing them. 6 Am. & Eng. Enc. Law (2 ed.) 921; *Wolcott* v. *Wigton,* 7 Ind. 44. As a majority vote of the qualified electors by an exercise of the initiative power can enact a statute, they can, by giving such law an appropriate article and section and entitling it an amendment of the constitution, make it a part of the fundamental law and render the supposed stability of the organic act subject to sudden and serious changes. It may well be doubted, therefore, if any alteration in the constitution that has been inaugurated by the initiative should be strictly interpreted.

6. Assuming, without deciding, that the amendment referred to is entitled to no greater respect than an ordinary statute, and should be construed as such with reference to the local option law, the rule is well settled that repeals by implication are not favored, unless the incompatibility between a prior and a subsequent act on the

same subject is so apparent that both enactments cannot remain in force, and that, if the latter statute only modifies a prior law, the two must be interpreted as one act: *Sandys* v. *Williams,* 46 Or. 327 (80 Pac. 642) ; *Hall* v. *Dunn,* 52 Or. 475 (97 Pac. 811: 25 L. R. A. (N. S.) 193). Based on this rule, the alteration should be construed in connection with the local option law so as to give effect to the former and to interfere as little as possible with the latter,. allowing both to remain operative as far as feasible.

7. It will be remembered that exclusive authority to license, regulate, control, suppress, or prohibit the sale of intoxicating liquors is by the amendment vested in every municipality. The power thus granted to an incorporated city or town, being exclusive, necessarily restrains all subsequent interference with an exercise of the authority to license, regulate, or prohibit the sale of intoxicating liquors for beverage purposes by any voters who reside outside the city limits. The amendment therefore impliedly repeals so much of the local option law as permits "registered voters of any county" to petition for a prohibition election in the entire territory or to vote upon the question when any part of such district is an incorporated city or town, and also so much thereof as declares that the provisions of that law are enforceable in any precinct that "may lie partially within and partially without an incorporated city or town." Section 4920, L. O. L.

8. The change in the organic act impliedly amends Section 4933, L. O. L., so as to allow an election to be held on the question of prohibition in a ward or precinct of such municipality, notwithstanding prohibition has carried in the entire county, or in a subdivision thereof when the latter district embraces a precinct wholly within an incorporated city or town. The alteration in the fundamental law divorces such municipalities from a county of which they form a part, so that the remainder of the

county and incorporated cities and towns therein consti-
tute, in effect, separate political entities with respect to
each other (*Tabor* v. *Lander,* 94 Ky. 237, 242 [21 S. W.
1056]), in all of which the local option law may be put
into operation in the same manner and to the same extent
that it was formerly employed in the entire county, in a
subdivision thereof, or in a precinct therein.

9. It is believed that the exclusive power to license or
prohibit the sale of intoxicating liquors, which purports
to be vested in incorporated cities and towns, having been
expressly made subject to the provisions of the local
option law, the right thus granted to the municipality is
necessarily governed by all such provisions so far as
applicable requiring for its enforcement in changing an
order for or against prohibition that the petition therefor
should be presented to the county court, which should
order an election to be held to determine the question,
notwithstanding the phrase "within the limits" of the
municipality is used in the amendment.

In view of this conclusion, it is unnecessary to deter-
mine whether or not the last alteration of the organic act
is self-executing, in that it does not require any legisla-
tion to carry the amendment into effect: *Long* v. *City of
Portland,* 53 Or. 92 (98 Pac. 149, 1111) ; *Acme Dairy Co.*
v. *Astoria,* 49 Or. 520 (90 Pac. 153). A moment's reflec-
tion, however, will show that the fundamental law as
changed may be difficult to apply or enforce in precincts
situate partially within and partially without an incor-
porated city or town. Precincts that are entirely within
or wholly without such a municipality will not be
materially affected by the alteration. If a county could
be so divided that all its precincts formed a part of an
incorporated town, the amendment of the clause of the
constitution would seem practically to disfranchise every
legal voter in the county from determining whether or
not the sale of intoxicating liquors should be prohibited

either in the county or in a municipality therein. The same result would necessarily follow as to precincts partially within and partially without a city or town. The county court, it is true, could readjust election precincts, making their boundaries conform to the limits of an incorporated city or town. Section 3304, L. O. L. As no statute exists commanding an establishment of the boundaries of a precinct, it is doubtful if a rearrangement of the limits thereof could well be enforced, and hence it would seem possible for a county court to defeat any attempt to change its order, either for or against prohibition in precincts partially within and partially without a city or town. Notwithstanding the possible consequences suggested, we believe the amendment is valid, and for that reason is susceptible of being enforced under the restrictions indicated.

10. Giving to each word of the last amendment the importance to which it is entitled, it will be seen that, while the legal voters of every city and town are authorized to license or prohibit the sale of intoxicating liquors therein, the clause, "but such municipality shall within its limits be subject to the provisions of the local option law of the state," is a limitation upon the power delegated whereby it can be exercised only in the manner prescribed in the law referred to. The word "exclusive", as thus used, when limited, as it is, by the clause referred to, is not in our opinion entitled to the force and importance usually given to that adjective. As such restriction contains no exception, we are of the opinion that an employment of the power conferred is subject to all the consequences that may have resulted from an adoption of the local option law, so that an order of prohibition, made in the county as a whole, cannot be modified or vacated except by a subsequent vote of the qualified electors of the incorporated city or town cast against prohibition at an election regularly called for that purpose in the municipality.

No election of that kind having been held in the city of Joseph, the license issued to defendant is invalid, and hence the judgment is affirmed.                    AFFIRMED.

MR. JUSTICE BURNETT delivered the following concurring opinion:

I agree to the conclusion reached by MR. JUSTICE MOORE, but not with his reasoning.

Prior to the general election in November, 1910, Section 2 of Article XI of the Constitution of Oregon read thus:

"Sec. 2.   Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws.   The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town.   The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the State of Oregon."

At the election alluded to, the people by the initiative process amended that section by adding to it these words:

"And the exclusive power to license, regulate, control or to suppress or prohibit the sale of intoxicating liquors therein is vested in such municipality; but such municipality shall within its limits be subject to the provisions of the local option law of the·State of Oregon."

The meaning and effect of this addition to the section first quoted are the elements of the question presented for solution.   As a preliminary to the consideration of the matters involved, it is proper to note here the progress of statutory and constitutional legislation as well as judicial utterances relating to the contention before us. First came the enactment by the initiative process of what is known as the "local option law," making the legality of the liquor traffic to depend upon the result of popular elections to be held in a county as a whole or in subdivisions or precincts thereof.   Laws 1905, p. 41; L. O. L. title 36,

c. 1, § 4920 *et seq.* This designation of "local option law"
is recognized in *State* v. *Langworthy,* 55 Or. 303 (104
Pac. 424). Viewing in this enactment a rising storm of
prohibition, some cities and towns cast an anchor to the
windward, so to speak, by procuring from the legislative
assembly amendments to their charters in the form of
enactments subsequent to the adoption of the local option
law whereby the municipality in question should be
exempt from the operation of that law. Other charters
were amended in the opposite direction so as to make
municipal management of the liquor traffic expressly sub-
ject and subordinate to the state law on local option. Of
the former class the city of Medford is the most noted
example. The legislative assembly by the act of February
7, 1905, gave its charter power "to license, tax, regulate
or prohibit barrooms, drinking shops, * * and all places
where spirituous, malt or vinous liquors are sold or kept
for sale, irrespective of any general law of the state on
this subject enacted by the legislature or the people at
large." In *Hall* v. *Dunn,* 52 Or. 475 (97 Pac. 811: 25
L. R. A. (N. S.) 193), this court, construing that pro-
vision of the Medford charter, held that, except as
restrained by the Constitution of the State, the power to
enact statutes was vested in the legislative assembly
equally with the people at large acting under the initiative
process; that in this respect the people and the legislative
assembly were each a repository of statute making pow-
ers, co-ordinate in authority, and that the new Medford
charter, being the latest expression of the legislative will,
must prevail *pro tanto* over its former utterances in the
local option law. Following the situation thus created,
the people put an end to the activity of the legislative
assembly in the indiscriminate and diverse amendment
of municipal charters by adopting at the general election
in June, 1906, the change in the original Section 2 of
Article XI of the Constitution so as to make it read as

first quoted above. The manifest purpose of the people in the passage of this constitutional amendment was to prevent the co-ordinate branch of the statute making power from passing local laws, the effect of which was to evade the general laws initiated by the people. As the people are supreme and exclusive in the power of constitution making and have been from the beginning (Section 1, Article I, of the Constitution of Oregon), that amendment marked the terminus of special legislation in the direction noted. The next step in the contest between the people at large and restricted localities as to the exercise of legislative power is described in *Baxter* v. *State*, 49 Or. 353 (88 Pac. 677: 89 Pac. 369). Coos County, as a whole, at a local option election on the first Monday in June, 1906, gave a majority against prohibition, but West Coquille precinct, comprising territory lying partly within and partly without the limits of Coquille City, returned a majority at the same election in favor of prohibition.

The 1906 revision of the section of the constitution in question, after excluding the legislature from that function, had said that "the legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the State of Oregon." Soon after the result of the local option election was declared and West Coquille precinct was made dry, Coquille City, acting under this provision, amended its charter so as to assume the power to license the sale of intoxicating liquor within its limits. It followed this by enacting an ordinance on the subject, and, in pursuance thereof, issued to Baxter a license authorizing him to sell liquor at a place at once within the city limits and within the boundaries of the dry precinct of West Coquille. He sold liquor at that place and claimed immunity from prosecution under the local option law by reason of what the city had done in the way of amending its charter and licensing him to sell liquor. On

Sig. 2

his appeal in a proceeding to review his conviction of violating the local option law, this court held that law to be a criminal law within the terms of the constitution, and that as such it must prevail over the amendment of the city charter where the two were in conflict, even within the city limits. This traces the progress of events to the election of November, 1910, and the adoption of the latest revision of Section 2, of Article XI, of the constitution, otherwise known on the hustings as the "Home Rule Amendment." The contention of the defendant is that this section as it now stands repeals the local option law so far as it contemplates participation by rural voters in a local option election designed to affect the sale of liquor in an incorporated city or town although the election be called for the county as a whole. In other words, he claims that the direct result of the change in the section is to divide the territory of every county into two classes, rural and urban, and to destroy local option elections in any county as a whole, leaving the nearest approach to that kind of an election to be such as might be arranged among the rural voters only. To support this contention, there are no words of express repeal to be found in the section under consideration and that result can be achieved only by implication. As Justice McBRIDE forcibly says in *State ex rel.* v. *Malheur County Court*, 54 Or. 255 (101 Pac. 907: 103 Pac. 406) :

"A repeal by implication only arises when both statutes cannot be reconciled with each other by any reasonable interpretation, or where there is a clear intent shown by the terms of the latter act that it shall supersede the other. * * Repeals by implication are not favored, and repugnancy between two statutes should be clear before a court is justified in holding that a later statute impliedly repeals an earlier one."

In sound reason this rule applies here, although the alleged irreconcilable repugnance necessary to support a repeal of the former statute by implication arises, if at

all, between that enactment and the constitution. This is logical because both the statute and the constitution came direct from the people by precisely the same initiative process, and the people cannot be presumed to say one thing in one instrument and directly the opposite in the other. Such a result should be indicated by unmistakable terms or be supported by the clearest necessary implication or be discarded as unsound. Moreover, in the decision of questions about a supposed conflict between a statute and a constitution in which, of course, the former must yield, courts will not declare the statute unconstitutional unless the two are palpably antagonistic; every doubt being solved and every intendment being given in favor of the statute. This rule is sustained by an unbroken line of decisions of this court from *Cline* v. *Greenwood*, 10 Or. 230, through *Cook* v. *Port of Portland*, 20 Or. 580 (27 Pac. 263: 13 L. R. A. 533) ; *State* v. *Shaw*, 22 Or. 287 (29 Pac. 1028) ; *Simon* v. *Northrup*, 27 Or. 487 (40 Pac. 560: 30 L. R. A. 171), and other cases down to *State* v. *Cochran*, 55 Or. 157 (105 Pac. 884), in which the very existence of this court as at present constituted was upheld by the application of this self-same principle of construction. Again, "the rule of statutory construction is a familiar one, that all acts relating to the same subject are in *pari materia* and are to be construed as though their several provisions were incorporated together and constituted one entire act. Equally well settled is another rule of construction, and that is that every word in a statute must be given its proper meaning and effect, if possible. And our code (Section 715, L. O. L.) declares another rule quite as important and salutary, as follows: 'In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several

provisions or particulars, such construction is, if possible, to be adopted, as will give effect to all.' " Justice STRAHAN in *Miller* v. *Tobin,* 16 Or. 540, 556 (16 Pac. 161, 170).

The citadel of the defense here is based upon the clause:

"And the exclusive power to license, regulate, control, or to suppress or prohibit the sale of intoxicating liquors therein is vested in such municipality."

An outwork of this citadel depends upon the words, "within its limits," in the succeeding clause, the conclusion sought to be deduced being that, although the local option law was hitherto a valid living force throughout the State at large, yet by virtue of these words when it comes to a city boundary the law is shorn of its sanction as a State law and within the limits of the town becomes a mere municipal regulation. These positions ignore the remainder of the section. The "exclusive power" mentioned means nothing more than was already vested in every incorporated city or town by the section under examination prior to the amendment of 1910. The people, by mandatory language, had forbidden the legislative assembly to meddle in any way with municipal charters and had delegated that class of legislation to "the legal voters of every city and town, * * subject to the constitution and criminal laws of the State of Oregon."

The city of Coquille attempted "within its limits" to legislate in its own way and amend its charter on the subject in question here, and this court in *Baxter* v. *State,* 49 Or. 353 (88 Pac. 677: 89 Pac. 369), overturned that amendment of the charter, saying, in substance to the municipality:

"Your legislation is void because it is in conflict with a certain criminal law of the State to which law you are subject, namely, the local option law."

But for the clause making them "subject to the constitution and criminal laws of the State" the legal voters of that city had as "exclusive power" as could be con-

ferred upon them and there was nothing superior to
them except the inherent power of the people which
is declared in the first section of the constitution, and
which is now and always has been the ultimate force
pervading and upholding the government.  Under these
conditions, alike on principle to those now before us, this
court in the Baxter case defined what it meant for a
municipality to be "subject to the constitution and crim-
inal laws of the State."  The substance of the definition
is that the criminal laws of the State, including this par-
ticular local option law in all its parts, have undiminished
authority over every city or town even "within its limits"
notwithstanding the municipality's otherwise "exclusive
power."  The words thus construed and applied as a limi-
tation upon "exclusive power" existing then as much as
now are retained in their former position in the revised
section and upon the principle of *stare decisis,* if for no
other reason, should have the same force as they had
before.  The words "within its limits" do not change the
conditions in existence before the revision of 1910.  They
only serve to intensify what has already been said in gen-
eral terms that city boundaries present no obstacle to the
supremacy of the criminal laws of the State over any
internal regulation of a municipality.  Where else than
"within its limits" could a city be subject to either the
constitution or any criminal law of the State?  The city
of Joseph is not subject to any law in Grant County or
Jackson County because the city does not exist there.
Neither is it subject to any law outside of its limits even
in Wallowa County for the same reason.  Locality is the
essence of municipal existence; the law of its being beyond
which it cannot pass.  Being a mere department or agency
of the State, in the language of *Straw* v. *Harris,* 54 Or.
424 (103 Pac. 777), it has no authority as a governmental
agency outside its limits, and as such exists only within
its boundaries.  In no place whatever except "within its

limits" has it ever been or can it be subject to any law
of the State. While it cannot in its governmental capacity
operate outside its limits, external agencies and laws in
many other cases as well as in this particular instance
do control affairs within its limits. Further by way of
illustration, the result desired by the defendant might be
attained if instead of the last clause the people had em-
ployed some such words as these:

"But such municipality shall, within its limits, be
exempt from the provisions of the local option law as
affected by votes outside those limits."

It is illogical to say that the same desired result will
be worked out by using the word "subject" instead of the
word "exempt" as put in the illustration. The two words
are antonyms, yet the defense would employ either for
identically the same purpose. It is inconceivable how ·
the word "subject" when applied in general terms to the
constitution and all criminal laws of the State shall mean
one thing in limiting the exclusive power of a municipality,
and then only a few lines further on in the same sentence
mean less or the opposite when used for the same pur-
pose specifically applied to a particular criminal law.
The word loses none of its force by being repeated and
given intensified application.

The logic of the defendant's contention is that the
words "exclusive power" are to be construed in their
unrestricted sense. At least, he maintains that the effect
of the amendment is to repeal the local option law so
far as to exclude the rural voters of the county from all
elections which would otherwise affect the liquor traffic
in the city. With this as his major premise established
on the day of the election, the minor premise, the wet vote
in Joseph, was made good at the same time, and his
exemption from prosecution ought to follow as a con-
clusion with the certainty of a syllogism. If those words
are to be thus construed, they carry with them the author-

ity to establish procedure and penalties and other things
necessary to the proper administration of the power, all
in the name of the city; for otherwise the grant is barren,
and of no force. The power was not conferred without
the right to use it to the fullest extent, unless restrained
by some exception qualifying the terms of the grant and
defeating the defendant's major premise. This exception
is found clearly defined in the clause:

"But such municipality shall within its limits be sub-
ject to the provisions of the local option law."

The argument of the defendant is fallacious in its major
premise. The word "but" here means "that what follows
is an exception to that which has gone before and is not
to be controlled by it." *Western Union Tel. Co.* v. *Harris*
(Tenn. Ch.) 52 S. W. 748, 752; *Stonestreet* v. *Harrison,*
15 Ky. 161, 163; *First Nat. Bank* v. *Foster,* 9 Wyo. 157
(61 Pac. 466, 467: 63 Pac. 1056: 54 L. R. A. 549). The
clause which it introduces means that the town is subject
to all of the provisions of the local option law, and not
to only part of them. They include the county unit, inclu-
sion of the whole or any part of any city or town in a
subdivision, county administration of the elections, and
state prosecutions of its violations. In the employment
of the words "provisions of the local option law" no excep-
tion whatever of any of those provisions is made. Hence
they must all be included. Restrained by Section 715,
L. O. L., we cannot so construe the amendment as to
include some of them and omit others, for it would emas-
culate the law to which in its every provision the people
by their constitutional amendment have repeated all cities
and towns shall be subject, and that, too, in the only
place in which any of them could be thus subjected, viz.,
"within the limits."

These provisions as well as others of the local option
law are repealed and set at naught, if we would heed the
arguments of defendant's counsel, all without a word

expressing repeal, but, on the contrary, in the very face of the constitution saying that these municipalities shall be subject to the provisions of this very law, none of which provisions are excluded.    Such a conclusion reverses the rule against favoring repeals by implication and overturns the oft-repeated decisions of all courts that every intendment will be used to uphold a statute when it is attacked for alleged conflict with the fundamental law.    The sum and substance of the revision is that, whereas before in general terms the people interposed the constitution and criminal laws of the State as a qualification of and limitation upon the otherwise "exclusive power" of municipalities to enact and amend their charters, now in the revision, they have gone into details, and have not only repeated their former injunction, but have also particularly specified this identical criminal law as one of those to which municipalities must be subject.    It means that the whole people have not yet abandoned their supreme authority over all the State, and do not intend to allow their government of the State to disintegrate entirely into the village system. In his masterly opinion in *Straw* v. *Harris*, 54 Or. 424 (103 Pac. 777), MR. JUSTICE KING made a strong case against this tendency, and his reasoning applies here with great cogency.    In construing a law, courts will consider the mischief designed to be remedied:    *Toomey* v. *Dunphy*, 86 Cal. 639 (25 Pac. 130) ; *Soby* v. *People*, 134 Ill. 66 (25 N. E. 109) ; *Swan* v. *Mulherin*, 67 Ill. App. 77.    In the light of that rule, this view of the constitution is supported by a sound financial reason, independent of all preaching or morals.    It is a well-known fact, within common observation, that somewhere in the analysis of almost every criminal prosecution liquor appears as a factor.    The county as a whole pays the expenses of such litigation on both sides from its inception before the committing magistrate to the final judgment of the Supreme Court.    These add much

to the burden of taxation. If in analogy to the frank pledge system of the common law every incorporated municipality, large or small, was responsible for the expense of such litigation originating "within its limits," it might well be given free rein under the "exclusive power" phrase. But the city enjoys the revenue arising from the liquor traffic, and pays none of the resultant expenses. Hence the people at large have said:

"If we must foot the bills while the town takes the revenue, by our local option law, with its county unit, we will retain some control of this matter as against the town even 'within its limits.' "

There is nothing in the argument that the construction here indicated means that, after all the debates and labors on this question at the last election, nothing was accomplished but a restatement in detail of what was before enunciated in general terms. It is not the first time such a result has occurred. We are not to presume that because the people speak more than once on a given subject they necessarily speak differently every time or with a double tongue. Statutes are often re-enacted in which case they are not considered as new laws, but relate back to the former law on the same subject as against intermediate legislation: *Allison* v. *Hatton,* 46 Or. 370 (80 Pac. 101) ; *Renshaw* v. *Lane County Court,* 49 Or. 526 (89 Pac. 147). The reasoning of the learned circuit judge who heard this case is sound. The construction which he gave the section in question is easy and natural, and avoids all the confusion that would attend a contrary course, for the local option law, unless accepted as a whole, will be a misfit wherever applied. There can be no half way ground about the administration of this law. It either goes to the city as an entirety under its exclusive power, or it remains where it was originally vested and stands as a vital and controlling exception to what the defendant maintains is an unlimited power bestowed upon the city.

The people first made known their will on this subject by their local option statute which all understood, as it was intended, to. apply to the whole State by counties or subdivisions or precincts thereof regardless of city boundaries. Recognizing this as the true construction, Medford and some other towns had their charters amended so as to overcome the statute "within their limits" which could be and was legitimately accomplished by the latter as against the former statute. The people responded in their second utterance on the subject by declaring in general terms in the first amendment to the section in question that, although the voters of a municipality might enact or amend their charters exclusive of the legislative assembly, yet the exercise of the power thus conferred was subject to the constitution and criminal laws of the State. This court decided that this amendment made the local option law paramount to any charter or municipal regulation even within the limits of the municipality. The people, speaking for the third time, have crystallized the law as thus declared into constitutional form, and have not only repeated the very words they said before, but have also particularly specified by name the local option law as one of those to which every municipality shall be subject.. The people have not stultified themselves, but have spoken the same way every time on this matter, and their mandate should be obeyed.

For these reasons, the judgment should be affirmed.